1
2
3                                    *FOR PUBLICATION*
4
5                      **UNITED STATES BANKRUPTCY COURT**
6                        **EASTERN DISTRICT OF CALIFORNIA**
7
8
9
10   In re                          )    Case No.  14-91565-E-7
                                    )    Docket Control No.  HSM-9
     RICHARD CARROLL SINCLAIR,      )
11                                  )
                Debtor.             )
12   _____)

13
                    **MEMORANDUM OPINION AND DECISION**
14          **SUSTAINING BIFURCATED OBJECTION TO CLAIM OF EXEMPTION**

15          Gary Farrar, the Chapter 7 Trustee ("Trustee") filed an Amended Bifurcated Objection to

16   Claim of Exemption ("Bifurcated Objection") pursuant to the order of this court on the first

17   Objection to Claim of Exemption.  Order, Dckt. 457; Civil Minutes Dckt. 455.  The Trustee objects

18   to the "Personal Injury" exemption claimed in a "malicious prosecution suit" under California Code

19   of Civil Procedure § 704.140 filed by Richard Sinclair ("Debtor"). [1]

20          Trustee notes that Debtor now asserts that several claims (which are not listed on

21   Schedules B and C) exist against Andrew Katakis, California Equity Management Group, Inc., New

22   Century Townhomes (formerly Fox Hollow of Turlock Owner's Association), and their counsel

23   _____

24          [1]  Proper notice of the Bifurcated Objection was provided.  The Proof of Service states
     that the Motion and supporting pleadings were served on Debtor (*pro se*), Chapter 7 Trustee,
25   creditors, parties requesting special notice, and Office of the United States Trustee on
     November 10, 2016.  By the court's calculation, 21 days' notice was provided for the initial
26   hearing on the Objection.  14 days' notice is required.
27
           At the initial December 1, 2016 hearing, the court set the briefing schedule for the
28   January 26, 2017 hearing on the Bifurcated Objection. Civil Minutes, Dckt. 497; Order,
     Dckt. 500.

exist. Such additional purported claims are property of the bankruptcy estate, assets in which Debtor now contends he had previously claimed an exemption on Schedule C. Those additional purported claims include: intentional infliction of emotional distress, stalking, elder abuse, violations of Due Process under the Constitution, and violations of Consumers Legal Remedies Act. Trustee believes that the "malicious prosecution suit" referred to on Debtor's Schedule C is Stanislaus County Superior Court Case No. 668157.

A settlement was reached between the Trustee and the persons against whom Debtor asserts that malicious prosecution claims (and now other purported claims) exist. That settlement (which includes the exchange of general releases, with specified exceptions) was approved by order of the court entered on the Docket on January 10, 2017. Dckt. 537. No appeal was taken from that order.

Upon consideration of the evidence, legal authorities, arguments, the Schedules in this case, the exemption claimed on Schedule C, and the files in this case, the court sustains the Bifurcated Objection and disallows the claim of exemption pursuant to California Civil Code § 704.140 in its entirety.

**SUMMARY OF PROCEEDINGS LEADING UP TO
THE JANUARY 26, 2017 HEARING ON THIS
BIFURCATED OBJECTION TO CLAIM OF EXEMPTION**

**First Objection to Claims of Exemption**

On June 6, 2016, the Trustee filed the first Objection to Debtor's Claim of Exemptions, Docket Control No. HSM-008 (the "First Objection"). Dckt. 445. In the First Objection, the Trustee objected to exemptions claimed in: (1) personal property claimed exempt under the 11 U.S.C. § 522(d) exemptions (which are not permitted under applicable law, discussed *infra*), (2) a vehicle, (3) malicious prosecution claim pursuant to the wrongful death exemption, and (4) malicious prosecution claim pursuant to the personal injury exemption.

On August 31, 2016, this court filed an order sustaining the First Objection as to all exemptions identified, except for the one asserted as a personal injury claim exemption. Order, Dckt. 457. The court overruled that objection without prejudice, bifurcating that determination to an amended objection, if one was filed by the Trustee. *Id.* The court set a deadline for filing and serving an amended objection (which is the Bifurcated Objection now before the court) and set a

2

status conference for December 1, 2016, for the amended objection, if filed.[2]

**Debtor's November 16, 2016 Status Conference Statement**

Debtor filed a Status Conference Statement on November 16, 2016. Dckt. 468.[3]  Debtor recounted the court's August 25, 2016 hearing on the prior objections to claims of exemption and that Debtor did not oppose the ruling sustaining those objections to exemptions.  Debtor asserted in the November Status Report that determining what dollar amount to list as exempt pursuant to California Code of Civil Procedure § 704.140 was "too hard" at that time.  Debtor further stated that he was seeking to recover $40 Million for the rights the Trustee was in the process of settling.  To do so, Debtor intended to file a fourth amended state court complaint.

**Trustee's Status Report**

The Trustee filed a Status Report on November 17, 2016. Dckt. 472.  The Trustee stated that the settlement referenced in his First Objection to Claim of Exemption had been documented and filed with the court.  The hearing on approval of that settlement was set for December 15, 2016. *See* Notice of Hearing, Dckt. 477.  Pursuant to the agreement, the settling parties (*i.e.*, the Katakis et al. cross-defendants in the malicious prosecution suit) shall pay $20,000.00 to the Estate in settlement of the cross-claims within ten days after entry of an Order from the Stanislaus Superior Court dismissing the malicious prosecution action in its entirety.  Creditors CEMG/Fox Hollow HOA would also irrevocably withdraw Proof of Claim No. 7-1 in this bankruptcy case.

---

[2]  In determining that the objection to the personal injury exemption claimed needed to be bifurcated, the court's findings include the following:

> The court will first have to determine what portion of the claims are actual "personal injury" damages, if any, and what portion are financial damages, if any.  Then, to the extent personal injury claims, the court will then need to determine what is **reasonably necessary** for the support of the Debtor.

Civil Minutes, Dckt. 455 (emphasis in original).

[3]  Debtor failed to attach a Docket Control Number to the Statement per Local Bankruptcy Rule 9014-1(c)(1) & (4).  Also, Debtor failed to certify his statement under penalty of perjury.

**December 1, 2016 Hearing**

The court issued a scheduling order for the hearing on this Bifurcated Objection, continued the matter to 10:30 a.m. on January 26, 2017. The court also established the following schedule for deadlines for the filing of pleadings in connection with this Bifurcated Objection:

    A.    December 29, 2016, for Debtor to file opposition to the Objection, including all supporting evidence, addressing only his alleged entitlement to the claimed exemption, and no other issues;

    B.    January 12, 2017, for the Trustee to file a reply to the Debtor's Opposition, as well as any evidence, if any; and

    C.    January 19, 2017, for Debtor to file a sur-reply, replying only to the issues raised in the Trustee's reply.

Dckt. 500. Additionally, the court set a status conference for the Bifurcated Objection at 2:00 p.m. on December 15, 2016, in conjunction with a hearing on the Trustee's Motion to Approve Compromise of the claims that are the subject of this Bifurcated Objection. That status conference was concluded and removed from the calendar. Dckt. 522.

**Debtor's Opposition to Bifurcated Objection to Claim
of Personal Injury Exemption**

Debtor filed an Opposition on January 11, 2017, in violation of the court's scheduling order requiring that an opposition be filed by December 29, 2016. Dckt. 538. No leave to file an untimely opposition was requested by Debtor.

Though untimely, the court considers the merits of Debtor's Opposition and the exemption claimed. As this court has previously addressed, Debtor is an attorney who was formerly licensed to practice law in the State of California. The court has accepted Debtor's assertions that he is a highly educated attorney, with extensive business experience. *See* Memorandum and Decision Approving Settlement, pp. 13–14 and Appendix A thereto; Dckt. 535. To the extent that an opposition could be presented, the court is confident that Debtor has presented it to this Bifurcated Objection.

In Debtor's Opposition, he asserts that the court's authority does extend "to alter or interfere with the Debtor's validly claimed exemptions." For legal authority, Debtor first cites to Federal Rule of Bankruptcy Procedure 7052, which incorporates Federal Rule of Civil Procedure 52 in

adversary proceedings.

Debtor also cites to a Rule 35 titled "Motion for Reconsideration, or for Decision by a Panel or Full Court." No identification of the source of this "Rule 35" is provided to the court.

The core of Debtor's Opposition is that the bankruptcy court cannot determine the validity and propriety of exemptions claimed by a debtor, citing to the *Stern v. Marshall* line of cases. As addressed herein, Debtor's contention is without merit.

**Trustee's Reply to Debtor's Opposition**

The Trustee filed a Reply on January 12, 2017. Dckt. 540. The Trustee notes that after the briefing schedule was set, the court granted on December 15, 2016, the Trustee's Motion for Approval of Compromise. *See* Dckts. 535 & 537. The Trustee asserts that adjudicating Debtor's Section 704.140 Malicious Prosecution Claims Exemption covering $20,000.00 of the settlement proceeds is now "front and center."

The Trustee asserts that Debtor bears the burden of proof for his claimed exemption, but notes that he has not made a single argument in support of the exemption. Instead, Debtor described all of his alleged damages as coming from business disputes and compensation for loss of property or property rights. The Trustee states that the court—due to Debtor's failure to meet the burden of proof—does not need to reach or determine the issue of what portion of the $20,000.00 in settlement proceeds is necessary to support Debtor, his estranged spouse, and his dependents. Even if the court were to address that issue, Debtor still has not met his burden of proof.

The Trustee requests that the Objection be sustained.

## OVERVIEW OF APPLICABLE LAW RE EXEMPTIONS

California has a standard state law set of exemptions that apply to enforcement of a judgment, and a second set of exemptions for debtors in bankruptcy (having opted out of the exemption items and amounts listed in 11 U.S.C. § 522(d)), which a debtor may elect in lieu of the standard exemptions otherwise available under California law. *Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 334 (B.A.P. 9th Cir. 2016). Debtors in California are not permitted to claim exemptions using the federal scheme provided in 11 U.S.C. § 522(d). *In re Pashenee*, 531 B.R. 834, 837 (Bankr. E.D. Cal. 2015); Cal. C.C.P. § 703.130. The exemptions that may be claimed by a debtor in this

bankruptcy case are specified in California Code of Civil Procedure § 704.140(a) and (b), which

provide in pertinent part as follows:

> § 703.140.  Election of exemptions if bankruptcy petition is filed
>
> (a) In a case under Title 11 of the United States Code, all of the exemptions provided by this chapter [Cal. C.C.P. §§ 704.010 - 704.995], including the homestead exemption, other than the provisions of subdivision (b) are applicable regardless of whether there is a money judgment against the debtor or whether a money judgment is being enforced by execution sale or any other procedure, but the **exemptions provided by subdivision (b) may be elected in lieu of all other exemptions provided by this chapter,** . . .
>
> > (3) If the petition is filed for an unmarried person, that person may elect to utilize the applicable exemption provisions of this chapter other than subdivision (b), or to utilize the applicable exemptions set forth in subdivision (b), **but not both** . . .
>
> (b) The following exemptions may be elected as provided in subdivision (a): [11 subparagraphs enumerating the specific alternative exemptions that may be elected in a bankruptcy case]. . . .

Cal. C.C.P. 703.140(a) (emphasis added).

**Burden of Proof in Claiming an Exemption**

As the Trustee notes, Debtor has the burden of proof supporting his claimed exemption.

Such a discussion arose in *Ziegler v. Casey (In re Ziegler)*, which states:

> Thus, in cases where state exemption law specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation.  California has mandated the use of state exemptions and has placed the burden of proof on the party claiming the objection.  Thus, the burden was on Debtor to show that his amended wildcard exemption for the sale proceeds was proper.

No. CC-15-1231-KiTaL, 2016 Bankr. LEXIS 2208, at *11–12 (B.A.P. 9th Cir. June 6, 2016) (citing

*Wolfe v. Jacobsen (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012) (which states that when

exemptions are determined by state law, "it is the entire state law applicable on the filing date that

is determinative of whether an exemption applies").  *See also Diaz v. Koasmala (In re Diaz)*,

547 B.R. 329, 337 (B.A.P. 9th Cir. 2016) ("California has mandated the use of state exemptions in

bankruptcy and has placed the burden of proof on the party claiming the exemption. *See* Cal. Civ.

Proc. Code §§ 703.580(b), 704.780(a)."); and *In re Tallerico*, 532 B.R. 774, 788 (Bankr. E.D. Cal.

2015) (stating that the burden of proof proscribed by California statute regarding contested claims

of exemption is substantive and must be applied by bankruptcy courts).

California Code of Civil Procedure § 703.580 expressly provides that for the exemptions claimed using the California exemption scheme:

> (a) The claim of exemption and notice of opposition to the claim of exemption constitute the pleadings, subject to the power of the court to permit amendments in the interest of justice.

> (b) At a hearing under this section, **the exemption claimant has the burden of proof**.

> (c) **The claim of exemption is deemed controverted by the notice of opposition** to the claim of exemption and both shall be received in evidence. If no other evidence is offered, the court, if satisfied that sufficient facts are shown by the claim of exemption (including the financial statement if one is required) and the notice of opposition, may make its determination thereon. If not satisfied, the court shall order the hearing continued for the production of other evidence, oral or documentary.

Cal. C.C.P. § 703.580(a)–(c) (emphasis added).

### DEBTOR'S REQUEST FOR AMENDED OR ADDITIONAL FINDINGS RELATING TO PROCEEDINGS OUTSIDE THIS CONTESTED MATTER

In his Opposition to the Bifurcated Objection based on California Code of Civil Procedure § 704.140, it appears that Debtor may also be attempting to include a "Motion to Correct Order and/or Reconsideration," seeking to have this court set aside or alter the prior order of the court (Order, Dckt. 573) approving the settlement of the claims of the estate by Katakis et al. and the Trustee.

To the extent the Opposition also includes such a motion, it was filed on January 11, 2017. That is consistent with the time period for filing a motion for amended or additional findings as provided in Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 7052, as incorporated into the Contested Matter practice by Federal Rule of Bankruptcy Procedure 9014. However, it needs to be filed as a separate motion and not combined into a hybrid opposition-motion. *See* Fed. R. Civ. P. 18 and Fed. R. Bankr. P. 7018 allowing for joining of multiple claims for relief in one complaint, and Fed. R. Bankr. P. 9014(b) which does not incorporate those two rules into Contested Matter proceedings.

To afford Debtor the opportunity to properly and timely address any request for amended or additional findings concerning an order in another contested matter, the court bifurcates the part of the Opposition which Debtor intends to be a motion and orders Debtor to file an "Amended

Motion" seeking such relief.  As an amended motion, the court deems the original filing date for such motion to be January 11, 2017, within the fourteen-day time period specified in Federal Rule of Bankruptcy Procedure 7052, so long as the "Amended Motion" is filed and served on or before February 28, 2017.

Debtor also cites the court to "Rule 35 Motions for Reconsider, or for Decision by Panel of by the Full Court." Opposition, p. 2; Dckt. 538.  Federal Rule of Civil Procedure 35 and Federal Rule of Bankruptcy Procedure 7035 do not contain such a rule, but deal with discovery and are titled "Physical and Mental Examination[s]."  There is no Rule 35 in the Federal Rules of Bankruptcy Procedure.

In conducting research, the court has identified a Rule 35 containing the language cited by Debtor—it is Rule 35 for the United States Court of Appeals for Veterans Claims.  The Rules for the Court of Appeals for Veterans Claims are not applicable in the United States Bankruptcy Court. In addition to not being provided for by the United States Supreme Court or Congress to be the rules of procedure in the bankruptcy court (*see* 28 U.S.C. § 2075 vesting in the Supreme Court the power to prescribe the rules of procedure for cases under Title 11), Rule 1 of the Rules of the Unites States Court of Appeals for Veterans Claims states that those rules "govern practice and procedure in the U.S. Court of Appeals for Veterans Claims. . . ." http://www.uscourts.cavc.gov/rule1.php.

Rule 35, cited by Debtor is not a rule governing the procedure of this court for "reconsidering" prior rulings.  There is a Federal Rule of Civil Procedure and a Federal Rule of Bankruptcy Procedure which could be applicable, though such rules have not been cited as grounds by Debtor.[4]

In filing the Amended Motion, Debtor is reminded that Federal Rule of Bankruptcy Procedure 9013 requires that the motion itself state with particularity the grounds upon which the

---

[4] As discussed below and in other rulings of the court, this mis-citing of legal authority appears to be part of Debtor's litigation strategy to confuse proceedings, say whatever he believes advances what he believes are his interests, and try to prevent the court from ruling on matters.  Accepting Debtor as the highly educated attorney and sophisticated business person he presents himself to be, the court concludes that these tactics, mis-citations, and non-productive litigation practices are intentional, not errors by Debtor.

relief is requested.  The "motion" cannot merely make reference to or direct the court to read "all the other pleadings" to figure out what grounds Debtor could or should be asserting subject to the certifications of Federal Rule of Bankruptcy Procedure 9011.  Additionally, the motion must be a separate pleading from the points and authorities, which are separate pleadings from each declaration and the exhibits (with all of the exhibits permitted to be combined in one exhibit document). L.B.R. 9004-1 and the Revised Guidelines For Preparation of Documents.

## DISCUSSION

As an initial matter, the court addresses the actual opposition portion (found in the middle of the second page) of Debtor's Opposition. Dckt. 538.  Debtor asserts a legal conclusion and then cites two irrelevant procedural rules.

The legal conclusion Debtor asserts is "that this Court's authority does not allow this Court to alter or interfere with the Debtor's validly claimed exemptions because it is beyond this Court's authority."  In the Points and Authorities portion of the Opposition, Debtor makes reference to various cases for the proposition that the federal court in this bankruptcy case lacks jurisdiction to rule on the Bifurcated Objection.  The court addresses those arguments and the law below.  No evidence was filed with the opposition to the Bifurcated Objection.  However, in documents not tied to the Bifurcated Objection and not appearing to have been served by anyone, Debtor has filed written argument, a declaration, and requested judicial notice of three documents. These additional documents, untethered to any proceeding before the court and not served, are addressed *infra*.

Debtor cites two rules, "Federal Rule of Bankruptcy Procedure 7052" and "Rule 35" (not identifying in which court the second rule applies).  No explanation is offered for why either rule has been cited in connection with the Opposition to this Bifurcated Objection, other than that the "court" has the authority to reconsider a ruling.  No prior ruling has been issued on the Bifurcated Objection now before the court.

**Jurisdiction and Exercise of Federal Judicial Power**

Though the court is not accepting the Opposition as a motion to amend the prior order of the court, Debtor asserts in the Opposition that:

A.	"Law v. Siegel (Exhibit 3) decided by the United States Supreme Court on

9

March 14, 2014, defines standards for interfering with Exemptions claimed by the Debtor which are valid. They simply require Debtors participation and consent or the Court cannot take away Debtor's rights to that exemption." Opposition, p. 3; Dckt. 538.

B.   "*Stern v. Marshall* (exhibit 4) further confirms that this Court is without authority to make this decision." *Id.*, p. 4.

C.   In quoting *Law v. Siegel*, Debtor directs the court to the following language:

    1.   "Whatever actions a bankruptcy court may impose on a dishonest debtor, it may not contravene express provisions of the bankruptcy code by ordering that the debtors exempt property be used to pay debts and expenses for which that property is not liable under the code." *Id.*

    2.   "We acknowledge that our ruling forces Siegel to shoulder a heavy financial burden resulting from Law's egregious conduct.  And that it may produce inequitable results, for trustees and creditors in other cases.  We have recognized however, that in crafting the provisions of section 522 'Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm exemptions visit on creditors.  The same can be said of the limits imposed on recovery of administrative expenses by trustees.  For the reasons we have explained to alter the balance struck by the statute." *Id.*, p. 5.

D.   In quoting *Stern v. Marshall*, Debtor directs the court to the following language:

    1.   "The bankruptcy court had the statutory authority to issue a final and binding decision on a claim based exclusively on a right assured by state law.  However, the bankruptcy court nonetheless lacked the constitutional authority to do so." *Id.*

E.   Debtor cites to the Supreme Court decision in *Schwab v. Reilly*, quoting extensively from it. *Id.*, p. 7–8.  The conclusion drawn by the Debtor from that quote is,

    1.   "Again, this merely asserts that debtors claimed exemption is secure and cannot be interfered with by the Trustee and the Trustee may only claim or deal with amounts over that which is protected unto the Debtor.

        The US Supreme Court limits all authority of the Court and the Trustee and creditors to only those amounts above what is claimed as an exemption by the Debtor. The debtor's claim of exemption is sacrosanct and cannot be interfered with without the debtors consent."  *Id.*; Debtor's conclusion to Opposition, p. 8–9.

In his Sur-Reply Debtor adds the following with respect to the ability of the bankruptcy court to adjudicate an objection to claim of exemption.

F.   Debtor directs the court to the following language in *Stern v. Marshall*:

    1.   "The bankruptcy court had the statutory authority to issue a final and binding decision on a claim based exclusively on a right assured by state law. However, the bankruptcy court nonetheless lacked the constitutional

1        authority to do so." Sur-Reply, p. 2; Dckt. 542.

2        Debtor's contention is that this court cannot constitutionally exercise federal judicial power

3    to rule on an objection to claim of exemption.  This sounds in the nature of a contention that federal

4    court jurisdiction does not exist.  Such an issue can be raised at any time, and may be raised *sua*

5    *sponte* by the court.  Inherent in every ruling of a federal judge is a determination that jurisdiction

6    exists and that the judge may properly issue the order for the matter before the court.

7    Review of Federal Court Jurisdiction and the Exercise of
8    Federal Judicial Power by Bankruptcy Judges

9        In citing to the Supreme Court decision in *Stern v. Marshall*, 564 U.S. 462 (2011), Debtor

10   dips his toe into the water of the proper exercise of federal judicial power, but does not wade in and

11   plumb the full depth of the issue.  Debtor fails to consider or discuss the line of cases which

12   subsequently address that principle.  To begin, the *Stern* decision does not stand for the proposition

13   that federal jurisdiction does not exist to determine non-core counterclaims or determine what

14   exemptions may be allowed pursuant to 11 U.S.C. § 522.  Rather, it addressed which federal judge

15   (district or bankruptcy court) is the proper judge to issue the final orders and judgment in non-core

16   adversary proceedings.

17       In *Stern*, the Supreme Court was presented with the issue of whether the bankruptcy judge

18   could issue the final judgment in an adversary proceeding commenced by the bankruptcy debtor

19   against a non-debtor party who did not consent to the bankruptcy judge entering the final judgment.

20   The Supreme Court considered the situation where that debtor was litigating an adversary

21   proceeding against a non-party – not a bankruptcy judge determining the allowability of an

22   exemption claimed by a debtor pursuant to 11 U.S.C. § 522.  The adversary proceeding in *Stern* filed

23   by that debtor asserted both an objection to the creditor's claim (a core-proceeding) and a counter-

24   claim against the creditor (a non-core proceeding absent being based on grounds determined as part

25   of the core-proceeding).  The Supreme Court concluded that the bankruptcy judge could enter final

26   orders and judgment on the objection to claim, which was a core proceeding.  However, the

27

28

11

objection to claim having been concluded, the bankruptcy judge (an Article I judge[5]) could not thereafter enter orders and final judgment on the remaining non-core counter-claim proceeding, which did not arise under the Bankruptcy Code or in the bankruptcy case (the objection to the claim having been resolved), without the consent of the parties, even though federal court jurisdiction existed for the counter-claim as a "related to" (non-core) proceeding. 28 U.S.C. §§ 1334(a), 157(c).

As discussed in *Stern*, the Supreme Court has long recognized that parties can consent to a bankruptcy judge issuing final orders and judgments for non-core proceedings (the "related to" proceedings not arising under the Bankruptcy Code or in the bankruptcy case). One manifestation of such consent is the filing of a proof of claim. *See Langenkamp v. Culp*, 498 U.S. 42, 111 S. Ct. 330, 112 L. Ed. 2d 343 (1990).

It is significant to note the conclusion stated by the Supreme Court in *Stern* addressing this exercise of federal judicial power and the entry of final judgments:

> *Article III of the Constitution* provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.

*Stern*, 564 U.S. at 503. The Supreme Court recognized that even for the non-core counter-claim the bankruptcy judge may issue final orders and judgment if it was part of ruling on an objection to a creditor's proof of claim. Also, the Supreme Court recognized that this limitation was only on entering final orders, not in conducting the proceedings. As provided in 28 U.S.C. § 157(c)(1), even for non-core matters in which not all of the parties consent to the bankruptcy judge issuing final orders and judgment, the bankruptcy judge (in a similar manner as a magistrate judge) conducts the proceedings and then makes proposed findings and conclusions to the Article III district court judge.[6] It is the district court judge, after *de novo* review of the proposed findings and conclusions,

---

[5] Judgeships created and appointments made pursuant to the U.S. Constitution, Article I power of the Legislative Branch of the federal government.

[6] Judgeships created and appointments made pursuant to the U.S. Constitution, Article III Judicial Branch of the federal government.

who issues the final order or judgment.

The proper exercise of federal judicial power has been refined in several subsequent opinions by the Supreme Court, putting to rest any contention that Article I bankruptcy judges cannot adjudicate rights and interests of non-debtor parties.  The Supreme Court in *Executive Benefits Insurance Agency v. Arkison*, ___ U.S. ___, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014), confirmed the 28 U.S.C. § 157(c) (1) process of the bankruptcy judge conducting the judicial proceedings and making the proposed recommendations and findings to the district court judge for a matter which is a related to proceeding (non-core).  *Id.* at 2168, 2173–74.

This was followed by *Wellness Int'l Network, Ltd. v. Sharif*, ___ U.S. ___, 135 S. Ct. 1932, 191 L. Ed. 2d. 911 (2015), the most recent refinement by the Supreme Court concerning the exercise of federal judicial power.  In *Wellness*, the Supreme Court confirmed that the Article I bankruptcy judge could issue final orders and judgment even in the related to (non-core) proceedings so long as the non-debtor party so consented.  In describing the allocation and exercise of federal judicial power with respect to bankruptcy proceedings, the Supreme Court stated:

> When a district court refers a case to a bankruptcy judge, that judge's statutory authority depends on whether Congress has classified the matter as a "[c]ore proceedin[g]" or a "[n]on-core proceedin[g]," §§157(b)(2), (4)—much as the authority of bankruptcy referees, before the 1978 Act, depended on whether the proceeding was "summary" or "plenary."  Congress identified as "[c]ore" a nonexclusive list of 16 types of proceedings, §157(b)(2), in which it thought bankruptcy courts could constitutionally enter judgment. Congress gave bankruptcy courts the power to "hear and determine" core proceedings and to "enter appropriate orders and judgments," subject to appellate review by the district court. §157(b)(1); see §158.   But it gave bankruptcy courts more limited authority in non-core proceedings: They may "hear and determine" such proceedings, and "enter appropriate orders and judgments," only "with the consent of all the parties to the proceeding." §157(c)(2). Absent consent, bankruptcy courts in non-core proceedings may only "submit proposed findings of fact and conclusions of law," which the district courts review *de novo*. §157(c)(1).

*Id.* at1940.

For non-core proceedings, the Supreme Court affirmed the long standing law that parties could consent to final orders and judgments being issued by the Article I bankruptcy judge for non-core, related to proceedings. *Id.* at 1942.  The Supreme Court described the "narrow holding" in *Stern* as follows:

> An expansive reading of *Stern*, moreover, would be inconsistent with the opinion's

13

own description of its holding. **The Court in *Stern* took pains to note that the question before it was "a 'narrow' one," and that its answer did "not change all that much" about the division of labor between district courts and bankruptcy courts.** That could not have been a fair characterization of the decision if it meant that bankruptcy judges could no longer exercise their longstanding authority to resolve claims submitted to them by consent. Interpreting *Stern* to bar consensual adjudications by bankruptcy courts would "meaningfully chang[e] the division of labor" in our judicial system. . . .

*Id.* at 1947–48 (citations omitted).

The "consent" to the bankruptcy judge issuing final orders and judgment on related to (non-core) proceedings need not be express, but may be implied from the conduct of the party. *Id.* at 1948.

Debtor's contention that *Stern* stripped the federal courts of jurisdiction for objections to claims of exemption is not correct. To the contrary, it recognizes the federal court jurisdiction and sets the foundation upon which a federal judge exercises the federal judicial power for entering final orders and judgment in bankruptcy cases and related to proceedings.

Claims of Exemption and Objections Thereto
Are Core Proceedings

Congress created under the Bankruptcy Code a federal asset exemption scheme for debtors. 11 U.S.C. § 522(b). The exemptions allowed as a matter of federal law arising under the Bankruptcy Code are computed in one of two ways. One method is using the dollar amounts and exemptions provided in 11 U.S.C. § 522(b)(2), (d) and (n), the federal exemption scheme. The second computational method is using the state law exemption scheme to determine the items and dollar amounts which may be claimed exempt under federal law. 11 U.S.C. § 522(b)(3).

Whether the federal exemption scheme or the applicable state law exemption scheme identifies the items and amounts to be used in determining the allowable bankruptcy exemptions, this is a federal law grant of exemptions under the Bankruptcy Code as part of the uniform bankruptcy laws to which Congress is given the sole authority to promulgate under Article I, Section 8, Clause 4 of the United States Constitution. Determination of exemptions is a federal law matter arising under the Bankruptcy Code—a core proceeding for which the bankruptcy judge issues the final order.

Congress has also expressly specified in 28 U.S.C. § 157(b)(2)(B) that "allowance or

14

disallowance of claims against the estate or exemptions from property of the estate . . . ." are core proceedings.  While we know from *Stern* that merely because Congress says something is core is not the final word (which final word rests with the Supreme Court), it is significant to note that this provision has been drafted tying claims and exemptions in property of the estate in the same paragraph.

Courts that have considered this issue have also concluded that determination of an objection to claim of exemption is a core proceeding arising under the Bankruptcy Code.  *See In re Coyle*, No. 14-90026, 2016 Bankr. LEXIS 668, at *5 (Bankr. C.D. Ill. March 2, 2016) (citing to *Stern*, 564 U.S. 462); *In re Sharp*, 490 B.R. 592 (Bankr. D. Colo. 2013), affirmed *Larson v. Sharp (In re Sharp)*, 508 B.R. 457 (B.A.P. 10th Cir. 2014).

The decision of the Supreme Court in *Law v. Siegel*, ___ U.S. ___, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014),  does not provide Debtor with a legal basis for his asserted "the court can't touch my exemption" opposition.  In *Law v. Siegel*, the Supreme Court addressed an issue of whether the court could use the powers arising under 11 U.S.C. § 105(a) to surcharge the debtor's exempt property ("punish the debtor") for administrative expenses caused by the debtor's misconduct.  In rejecting such practices, the Supreme Court stated that federal law, 11 U.S.C. § 522(k), prohibited surcharging exempt property except for specific circumstances arising under the Bankruptcy Code provided therein.  The Supreme Court held:

> It is hornbook law that §105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code."  Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.  That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. . . .  We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code.
>
> Thus, the Bankruptcy Court's "surcharge" was unauthorized if it contravened a specific provision of the Code.  We conclude that it did.  Section 522 (by reference to California law) entitled Law to exempt $75,000 of equity in his home from the bankruptcy estate. § 522(b)(3)(A).  And it made that $75,000 "not liable for payment of any administrative expense." § 522(k).  The reasonable attorney's fees Siegel incurred defeating the "Lili Lin" lien were indubitably an administrative expense, as a short march through a few statutory cross-references makes plain. . . .

*Id.* at 1194–95 (citations omitted).  It is significant to note in the above quote that the Supreme Court

references "Section 552" of the Bankruptcy Code as the statutory basis under which the exemption issue (into which California law is incorporated) arises and is determined in bankruptcy cases.

The other significant Supreme Court decision referenced by Debtor, *Schwab v. Reilly*, 560 U.S. 770 (2010), also works against the Debtor's arguments that his exemption claim is sacrosanct from review by the bankruptcy court. In *Schwab*, the Supreme Court makes clear that even though a debtor claims an exemption in property of the estate, that asset in which the exemption is claimed remains property of the bankruptcy estate.[7] While a debtor has a right to any exemption amount to which he is entitled, even if the trustee does not object to the claimed exemption, the bankruptcy estate retains the property in which the exemption is claimed, and all value (including future appreciation) in excess of the allowed exemption amount belongs to the bankruptcy estate. *Id.* at 782. *See also Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316 (9th Cir. 1992), addressing the rights of the bankruptcy estate to all value in excess of the allowed exemption.

Further, the bankruptcy debtor is entitled only to the exemption in the assets claimed on the bankruptcy Schedule C filed by the debtor under penalty of perjury (Federal Rule of Bankruptcy Procedure 1008).[8] As stated by the Supreme Court in *Schwab*:

> For all of these reasons, we conclude that Schwab [the trustee] was entitled to evaluate the propriety of the claimed exemptions based on three, and only three, entries on Reilly's Schedule C: the description of the business equipment in which Reilly claimed the exempt interests; the Code provisions governing the claimed exemptions; and the amounts Reilly listed in the column titled "value of claimed exemption."

*Id.* at 785.

---

[7] Congress has provided for exclusive federal court jurisdiction over property of the bankruptcy estate. 28 U.S.C. § 1334(e).

[8] Federal Rule of Bankruptcy Procedure 1008 provides:

Verification of Petitions and Accompanying Papers

All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.

This court has the power to and does so properly exercise federal court jurisdiction for the determination of the exemption to claim of exemption filed by the Trustee as a core proceeding.[9]

**Exemption Claimed by Debtor For "Cause of Action for Personal Injury"**

Debtor has claimed an exemption in this property of the bankruptcy estate pursuant to California Code of Civil Procedure § 704.140, which provides.

> (a)  Except as provided in Article 5 (commencing with Section 708.410) of Chapter 6, a **cause of action for personal injury is exempt** without making a claim.

> (b)  Except as provided in subdivisions (c) and (d), an award of damages or a settlement arising out of personal injury is **exempt to the extent necessary for the support of the judgment debtor** and the spouse and dependents of the judgment debtor.

Cal. C.C.P. § 704.140(a), (b) (emphasis added).

On Schedule B, the only possible claim that could relate to this exemption is the one described as "Katakis case for malicious prosecution plus Truax case." Dckt. 42 at 2-4.  There is nothing stated on Schedule B to indicate that it is a personal injury or wrongful death claim.  On Schedule C, Debtor has claimed an exemption only in a "malicious prosecution suit." Dckt. 42 at 5. The legal basis for the exemption is stated on Schedule C to be California Code of Civil Procedure §§ 704.140 and 704.150.

By prior order the court disallowed the exemption in the "malicious prosecution case" asserted pursuant to California Code of Civil Procedure § 704.150. August 31, 2016 Order, Dckt. 457.  As discussed in the Civil Minutes for the August Order disallowing the other claims of exemption, California Code of Civil Procedure § 704.150 is an exemption in a wrongful death claim, and there are no claims asserted by Debtor arising from the death of someone. Civil Minutes, Dckt. 455.  It is telling as to Debtor's litigation and lawyering tactics (Debtor was still licensed to practice law at the time Schedules B and C were filed) of saying or doing whatever he believed to be to his advantage (without regard to any legal or factual basis in support thereof) that he would claim an exemption based upon the death of a person when no such death had occurred.

---

[9]  28 U.S.C. §§ 1334 and 157; and the reference of bankruptcy cases and related to proceedings in this District, E.D. Cal. Gen. Ord. 182, 223.

As set forth in California Code of Civil Procedure § 704.140, the asset must be: (1) a cause of action for, or an award of damages or settlement arising out of personal injury and (2) exempt only to the extent necessary for the support of Debtor.

Debtor has stated under penalty of perjury that the exemption is claimed in a "malicious prosecution suit," but now argues that the claim has morphed over time into other claims dating back eleven years before the filing of the bankruptcy case. These additional claims are said to be claims for malicious prosecution, intentional infliction of emotional distress, stalking, elder abuse, violations of Due Process under the Constitution, and violations of Consumers Legal Remedies Act. No explanation is provided by Debtor, who is an attorney, why such claims (which are purported to predate the bankruptcy filing by eleven years) were not listed on Schedule B and an exemption claimed therein on Schedule C – both of which Schedules are executed under penalty of perjury by Debtor.

This "flexible" nature of what Debtor says exists for claims is similar to Debtor's ever-increasing valuation of such claim(s). The "malicious prosecution claim" is listed as part of the total $6 Million value on Schedule B for the "Katakis case for malicious prosecution plus Truax case." However, when the Chapter 7 Trustee filed a motion to approve a compromise and settlement of the claims Debtor's asserted value for the claim had grown to $40 Million. Memorandum Opinion and Decision for Approval of Settlement, discussion of unexplained increased value, pp. 24–25, Dckt. 535.

In his Opposition, Debtor offers no arguments or evidence as to why the "malicious prosecution suit" is litigation for a personal injury. Rather, he merely assigns that label to the exemption he desires to claim—much in the way he sought to claim the wrongful death damages for the "malicious prosecution suit" when no death existed.

**Asset Listed and Exemption Claimed**
**Under Penalty of Perjury**

As stated by Debtor under penalty of perjury, he has claimed an exemption in an asset stated to be: "malicious prosecution suit." Schedule C, Dckt. 42 at 5. As stated by the Supreme Court in *Schwab*, the trustee and creditors will rely on, and Debtor is limited to, the exemptions claimed in

assets listed on Schedule C. Here, the only asset in which an exemption has been claimed is the "malicious prosecution action." Debtor's pleadings and contention of possible claims that are property of the estate have grown in description to fit his litigation designs, but it does not change the fact that only the malicious prosecution action is listed on Schedules B and C under penalty of perjury. Dckt. 42 at 3 and 5.

At this juncture, in considering the arguments of Debtor and his conduct, it must again be remembered that Debtor is an attorney whose education and knowledge has been asserted by him as giving significant weight to his contentions in this case. Though his practices outside this court have resulted in Debtor losing his law license, that does not mean he is uninformed or not acting intentionally in how he has disclosed property of the estate on Schedule B, claimed exemptions on Schedule C, prosecuted his opposition to the Bifurcated Objection, and prosecuted this bankruptcy case, first as the debtor in possession and now as a Chapter 7 debtor. This court's discussion of Debtor's legal skills and litigation practices, the conclusions of other state and federal courts, and the California Supreme Court order of disbarment are discussed by this court in the Memorandum Opinion and Decision Approving Settlement. *See* Memorandum, pp. 13–14; and Appendix A thereto (review of pleadings and statements in the bankruptcy court), p. 14 and Appendix B thereto; Dckt. 535. This court's conclusions in the Memorandum Opinion and Decision Approving Settlement include the following:

> The court accepts Debtor-Sinclair as a very intelligent person, who has sophisticated business knowledge and a very extensive knowledge of the law. To the extent that Debtor-Sinclair makes representations to the court, advances legal arguments, files evidence, and advocates positions, the court finds that he does so intentionally and with full knowledge of the law and the merit, or lack of merit, of what he is trying to do.

> This conduct, including the use and misuse of the law and judicial proceedings, has not served Debtor-Sinclair well, ultimately leading to losing his law license. Some of the proceedings and actions in which other courts and the State Bar addressed Debtor-Sinclair's conduct are discussed in this Decision below.

*Id.*, p. 14:3–11. Then, in discussing the ever-increasing values stated by Debtor for the malicious prosecution claim, the court concluded:

> It appears that the valuations of these claims by Debtor-Sinclair are not based on rational analysis, but whatever number Debtor-Sinclair believes supports whatever he is attempting to do, or prevent from someone else doing, in this bankruptcy case.

19

In his November 16, 2016 filed Status Report, Debtor-Sinclair states that he now computes the damages as his "losses" caused by Katakis et al.  Status Report, p. 3:3-4.  The court is not provided with any explanation as to what "losses" have occurred since November 2014 that have caused the value of this asset to increase to whatever portion of the $6 Million stated on Schedule B under penalty of perjury when this case was filed to now $40 Million.  No explanation has been provided how "losses" could have occurred since November 2014, when Debtor-Sinclair commenced this bankruptcy case and the automatic stay has protected Debtor-Sinclair and the property of the bankruptcy estate.  Additionally, no declaration or credible explanation is provided as to what "assets" the bankruptcy estate or Debtor-Sinclair could have for such "losses" to be incurred, Debtor-Sinclair having transferred all significant assets to his wife, the Sinclair Trust, and the limited liability companies prior to the commencement of this case.

*Id.*, p. 25:11–24.

From these proceedings relating to the Schedules filed, the exemptions claimed, the Bifurcated Objection, and the Opposition by Debtor, the court concludes that Debtor has intentionally listed only the "malicious prosecution" asset, intentionally claimed a "personal injury" exemption, and intentionally claimed the exemption in only the malicious prosecution asset.  Now, it may be that this is a "flexible" statement of facts and law as part of a pre-designed scheme to abuse the exemption process, or that Debtor has become more and more desperate in his effort to maintain "spite litigation" and Debtor will say whatever new ideas he can generate, but Debtor's actions in doing so are intentional and deliberate.

**Debtor Has Not Carried His Burden of Proof**

Initially, the court notes Debtor has not provided the court with evidence of or a legal basis for concluding that a malicious prosecution action arising out of litigation over his business dealings (which adverse rulings against Debtor in that litigation have been affirmed on appeal)[10] are "a cause for personal injury" or any portion of the settlement entered into by the Trustee with Katakis et al. (Order, Dckt. 537) are damages or settlement arising out of "a cause of action for personal injury."

Additionally, Debtor offers nothing to meet the second requirement for any exemption—the amount exempt being limited to only "[t]he extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor." Cal. C.C.P. § 704.140(b).   In his

---

[10] *Sinclair v. Katakis et al.*, 2013 Cal. App. Unpub. LEXIS 509, Cal. 5th DCA No. F058822, (2013).

Opposition, Debtor makes the statement that:

> Debtor has no objection to the Trustee taking the $20,000.00 to pay his subordinate claim, which in his petition was for $40,000.00, not $20,000.00, but OBJECTS to Trustee without Debtor's consent, interfering with his primary exemption which this Court has already been made aware, is necessary for his retirement and future comfort in his waning years.

Opposition, p. 4; Dckt. 538 (emphasis in original). Debtor offers no evidence of what is "necessary" or why, but only his contention thereof. As discussed below, such contention is inconsistent with statements and testimony by Debtor previously in this case.

In his Reply, the Trustee characterizes Debtor's arguments as "simply a rehash of the same long-running business and litigation disputes between the Debtor and [Katakis et al.]," not a personal injury claim. Reply, p. 3:7–9. The Trustee also states that in substance Debtor's "necessary" argument is that because Debtor now states that the claim against Katakis et al. has grown from some part of $6 Million to over $40 Million, it is "necessary" because Debtor does not agree with the Trustee's settlement that was approved by the court.

As to "necessary," the prior arguments and evidence presented by Debtor weigh against him. Debtor has repeatedly told the court that he had millions of dollars in assets and began transferring property into his trust (which he states has been made irrevocable), for which his sister is the trustee, and into two limited liability companies, for which his sister is the managing member, for "tax planning purposes." He has also engaged in a separation with his wife (with the information provided to the court that there is no actual divorce), transferred assets to her, and was sufficiently financially strong to commit to make monthly support payments to his wife.[11]

---

[11] Deborah Sinclair, Debtor's wife, filed Proof of Claim No. 8 in this bankruptcy case. In it she states she is owed a claim of $152,988.33. Of this, Mrs. Sinclair asserts that $24,105.83 is secured and $128,882.50 is entitled to priority as a domestic support obligation. No copy of a marital settlement agreement or support order is attached. No copy of any security agreement is attached to Proof of Claim No. 8. No collateral is identified on Proof of Claim No. 8. However, Mrs. Sinclair has a list of domestic support obligations in the amount of $3,417.00 a month, which are asserted to have been unpaid beginning with the month of September 2011 and continuing for every month through March 2015, the month Proof of Claim No. 8 was filed.

Proof of Claim No. 8 is signed by an attorney, Spencer D. Sinclair, an attorney with the Law Offices of Corren & Corren.

These various statements concerning pre-bankruptcy transfers disclosed by Debtor to the court include the following:

> "1.   DEBTOR TRANSFERRED [his house] TO HIS TRUST IN 2009 and he [Andrew Katakis] objected, but the [unidentified] court said RICHARD SINCLAIR HAD AMPLE ASSETS REMAINING.
>
> 2.   The trust became irrevocable and elected an independent Trustee by 2012."

Debtor's Separate Chapter 11 Reply to Objection to Claim of Homestead Exemption, pp. 1–2; Dckt. 100. (Emphasis in original.)

Additionally, Debtor has presented the court with the following assets he has and business ventures by which he will pursue (when he was prosecuting this case as a Chapter 11 debtor in possession):

A.   "Finally, Richard Sinclair is retaking possession of his Oakdale Home Office consisting of approximately 7800 sq ft; he is cleaning out the main floor and getting bids for the cost to convert it to an 8 bedroom, 8 person Senior Citizen's [sic] assisted living center. He has gone through pre-licensing with the State and they will view the house, probably in March [2015]." Opposition to Katakis et al motion to convert the then Chapter 11 case to one under Chapter 7; Dckt. 87 at 11.

B.   "Debtor's revised plan provides for the rehabilitation of debtor's income earning abilities either as an attorney or in other areas. Debtor is a community college professor, was a builder and the President of a General contracting firm having built over 100 living units, a computer programmer, rancher and other professions." *Id.* at 15.

C.   "Prior to that, I was aware of the federal estate tax starting at 48% after exemptions and have tried to keep my assets under the $1 to $3 million amount. In 1996 and 2001, I gave my interests in my inheritance at Sinclair Ranch because it was worth about $6000 an acre and would eventually be worth many times more than that. I gave a great deal of my interest to my children. That interest was put in an LLC with my sister as the manager. She also owns a portion of that LLC as does my older brother Robert. I also gave my wife 40 acres for her security by 2001 because I had filed bankruptcy in 1994 due to my construction and real estate empire, so that she would always be protected. That was put in another LLC where I was the manager. Eventually, when we separated, the LLC deeded her her interest." Debtor's Status Conference Statement, Dckt. 488 at 3.

D.   On Schedule A Debtor states that he has retained a 20 year "leasehold" on his residence property which has been identified as being developed into a Senor Citizen living center. Dckt. 42 at 1. He states that his interest has a value of $175,000.00, which he asserts on Schedule A is "exempt."

E.   On Schedule B, Debtor lists having personal property assets consisting of household goods, furnishing, clothing, books, art, furs, and jewelry, all of which are exempt. *Id.* at 2.

F.   Debtor also lists on Schedule B having an $8,000.00 "exempt" musical instruments.

G.   Debtor appears to have no secured debt. Schedule D lists one secured claim for an unidentified property, but Debtor testifies as to having transferred away his valuable real property as gifts or for tax planning purposes.

H.   On Schedule I, while not listing income from his business ventures he stated that he was pursuing, Debtor lists having monthly income of $1,532.00 a month. *Id.* at 24. At the bottom of Schedule I, Debtor states that he expects to generate income from his receivables (which may be actually valueless), "plus plan" (which the court interprets to be the Senior Citizen venture Debtor is pursuing.

I.   Debtor's Statement of Financial Affairs is incomplete, with Debtor failing to disclose his income for 2014, when the case was filed, or for 2013 or 2012. *Id.* at 45. Again, given Debtor's high level of legal education (juris doctor and LLM) and business experience, the failure to disclose such information is highly suspect.

Debtor's unadorned conclusion that some portion of the malicious prosecution settlement (which Debtor has not shown is "personal injury cause of action") is "necessary" does not carry the day. For more than two years Debtor has been not only paying his living expenses, but during part of that time actively litigating in this case for himself and his sister (who is the trustee of the trust created by Debtor and managing member of the entities into which Debtor transferred substantial assets). He has also been actively pursuing at least one disclosed business venture, the senior citizen center conversion. The monies from the settlement have not been "necessary" for Debtor.

Debtor appears to have created a situation in which he has intentionally placed assets in his trust and limited liability companies as gifts for family members and away from his creditors. In doing so, Debtor was financially strong enough to do so without worry about paying his expenses. Debtor reports converting his revocable trust and making it irrevocable only two years before filing bankruptcy. Giving Debtor credit as a highly educated attorney and sophisticated business person, he would not have done so if he were wanting of money to pay for his necessary expenses. Debtor's statement of his conclusion of "necessary" is not only unsupported, but inconsistent with the facts before the court and the actions of Debtor.

**Additional Pleadings Discovered at the Hearing and Debtor's Request
For a Two-Month Continuance to File Documents to Oppose the Motion**

In his arguments at the January 26, 2017 hearing on the Bifurcated Objection, after reading the court's posted tentative ruling, Debtor requested that the court continue the hearing two months so that he could file more pleadings to oppose the Motion and provide the court with evidence in

23

support of the exemption.  Debtor offered no explanation as to why he, an experienced attorney, did not present proper and applicable legal authorities and evidence in support of the claimed exemption.  He merely stated that he thought he had filed documents in connection with other matters in this case that explained the basis for the exemption.  Debtor could not direct the court to such pleadings.  As stated on the record, the court denied the request.  As discussed by the court at the hearing, the time to oppose the Bifurcated Objection was then, at the scheduled hearing.  Debtor's request for further delay was a continuation of his litigation conduct of merely making statements, not supported by the law or evidence, in an effort to induce the court to delay proceedings and derail the prosecution of his bankruptcy case.  This Bifurcated Objection has been before the Debtor since August 2016.  In the six months Debtor has developed and presented the best arguments and evidence he could, and two more months have not been shown to be reasonable or necessary.

<u>Review of Additional Pleadings Filed by Debtor</u>

At the hearing, counsel for the Trustee advised the court that Debtor had earlier filed some documents relating to an exemption, but Debtor had not used any Docket Control Number (Local Bankruptcy Rule 9014-1(c)) for those documents.  The court notes that on December 21, 2016, Debtor filed a number of documents without any docket control numbers and which are not identified in the documents as  relating to any proceeding before the court.  These are Docket Entry numbers 524, 525, 526, 527, 528, and 529.  No Certificate of Service has been filed that these documents have been served on anyone.

The document filed as Docket Entry 524 is titled "Debtor's Claim for Exemptions."  The document is not an amended Schedule C, but merely a pleading written by Debtor.  In this document, Debtor provides the text of California Code of Civil Procedure § 703.140, some text attributed to "Bankruptcy Exemption Guide - California Page 4 of 5," and a portion of a prior tentative ruling of this court.

The document filed as Docket Entry 525 is titled "Declaration of Richard Sinclair."  In it, Debtor states that he has claims ranging from assault to stalking to elder abuse. Declaration, p. 2; Dckt. 525.  He states that the stalking claim goes back to 2003 (which is eleven years prior to the commencement of this bankruptcy case in November 2014).  Debtor explains that Katakis et al.

24

interfered with Debtor's business ventures and caused Debtor to suffer economic damages. Debtor discusses his other financial endeavors, stating that in 2007 and 2008 he was generating $21,298.63 per month from his law practice. *Id.*, p. 3. He states that he owned an apartment complex that was generating more than an additional $18,000.00 per month and had $1 Million equity in that property with a total value of $3 Million. *Id.*

In the Declaration, Debtor states that he has sued (not specifying when) Katakis et al. for $40 Million for fourteen years' worth of damages. It appears that these claims well predate the December 2014 filing of this bankruptcy case and, to the extent they actually exist, should have been listed on Schedule B and any exemption therein claimed on Schedule C. They are not listed, and, as stated at the hearing, the court does not find credible (and does not believe) that Debtor, a highly educated lawyer, unwittingly just lumped them all together by claiming the exemption in a generic "malicious prosecution claim" on Schedules B and Schedule C signed under penalty of perjury.

Debtor goes further to say that he believes that he needs $12 Million to "replace" his income and to pay his wife support (who has received substantial assets through the separation agreement disclosed by Debtor) of $2,637.00 per month, to give his children further gifts of $6,000.00 per month, and to make a lump sum further gift of $30 Million to his children. *Id.* Then, Debtor also wants another $3.4 Million for taxes on the above amounts.

The document filed as Docket Entry 526 is a request for judicial notice. The items and information subject to the request for judicial notice are: (1) a letter written by Debtor to Andrew Katakis dated January 2003, (2) an "Appraisal submitted in 332233 at time of Katakis Sinclair Settlement," and the "4th Amended Complaint filed in Stanislaus Superior Court Case No. 668157 and Federal Case No: 2:11 CV 05439."

In the request, Debtor quotes Federal Rule of Evidence 201(b) stating that the court may take judicial notice of court filings and other matters of public record, citing to *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.9 (9th Cir. 2006). Federal Rule of Evidence 201 states in pertinent part:

Rule 201. Judicial Notice of Adjudicative Facts

(a) Scope. This rule governs judicial notice of an adjudicative fact only, not a

legislative fact.

(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

In reviewing the Ninth Circuit ruling in *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, the court cannot find a "n.9." The footnotes in that decision stop at "7." However, in Footnote 6 the Ninth Circuit Panel does state that it may take judicial notice of court filings and other matters of public record, citing back to *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1320, 1364 (9th Cir. 1998). It appears that Footnote 6 is the intended authority cited.

In taking judicial notice, the Ninth Circuit panel "noticed" that there had been a court-approved settlement in a prior action involving Wal-Mart. The panel then concluded that the plaintiffs in *Reyn's Pasta Bella, LLC* could not attempt to collaterally attack the previous court-approved the settlement in the matter then before the Ninth Circuit. The only "fact" was that there was a settlement in the prior Wal-Mart action, not facts as to the merits of the issues in dispute before a different court. The Ninth Circuit panel took judicial notice of only the court-approved settlement and order thereon to apply the principles of issue preclusion to bar the plaintiff from collaterally re-litigating what had been determined in the prior action. *Reyn's Pasta Bella, LLC*, 442 F.3d at 746.

In the *Burbank-Glendale-Pasadena Airport Authority* decision, the Ninth Circuit Panel took judicial notice of the "fact" that pleadings were filed and that the City of Burbank was pursuing a separate state court action against the Airport Authority under California law challenging the constitutionality of acts by a political subdivision of the State. *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d at 1364. Judicial notice was not taken of the disputed "facts" being alleged or evidence asserted in the other state court action.

As more recently stated by the District Court on the appropriate use of judicial notice in *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) (internal citations omitted):

> While a court may take judicial notice of a judicial or administrative proceeding which has a "direct relation to the matters at issue," a court can only take judicial notice of the *existence* of those matters of public record (the existence of a motion or of representations having been made therein) but not of the *veracity* of the arguments and disputed facts contained therein. Similarly, a court may take judicial notice of the existence of certain matters of public record.  A court may not take judicial notice of one party's opinion of how a matter of public record should be interpreted.

The first "judicial notice document" purports to be a letter sent by Richard Sinclair to Andrew Katakis.  There is no showing that it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned that such a letter was sent.  Further, there is no showing that any of the statements made therein are accurate.  If properly authenticated (Federal Rules of Evidence 601, 602, 901, and 902), at best it would show that Debtor has known of possible claims for crimes under the California Penal Code against Mr. Katakis since 2003.  No such claims were listed on Schedule B or claimed exempt on Schedule C, both of which were signed under penalty of perjury by Debtor.

The second "judicial notice document" is a letter and appraisal.  There is no showing that the value of real property (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Almost every law and motion calendar in bankruptcy court has disputes over property values, and professions exist for appraisers and real estate agents to provide expert testimony as to value of property and all of the factors affecting value.

The third "judicial notice document" is a draft "Fourth Amended Complaint" that does not bear the filing stamps of any court.  The caption is styled for in the "Superior Court of California, County of Stanislaus," with "CASE No. 668157."  It has a signature date of October 26, 2016, for "Richard Sinclair."  That date is well after the commencement of this bankruptcy case and the conversion to Chapter 7, which would allow only the Chapter 7 Trustee to file such a complaint or assert such claims that are property of the bankruptcy estate. 11 U.S.C. §§ 541 and 704.  One of the eight stated causes of action is for "Malicious Prosecution." Dckt. 529 at 1.  The conduct upon which the claims are based dates back to 2003 and the period prior to the December 2014 filing of this bankruptcy case, indicating that any such claims are property of the bankruptcy estate. 11 U.S.C.

§ 541(a).

These documents (not having been served, there being no certificate of service) do not support Debtor's Opposition, even if considered by the court. Rather, they show that Debtor: (1) knew of any such purported claims beyond a "malicious prosecution claim," but Debtor did not disclose such claims on Schedule B under penalty of perjury; (2) Debtor did not exempt such known purported claims on Schedule C under penalty of perjury; and, (3) Debtor did not attempt to prosecute such purported claims (which to the extent they existed are property of the bankruptcy estate) until October 2016, when the Chapter 7 Trustee was administering property of the estate and settling claims with Katakis et al.

The court reviewed the docket in Eastern District of California District Court case 03-CV-05439. This court takes judicial notice of what is on the docket of the District Court for case 03-CV-05439, which includes:

A.    The action was instituted by Debtor by filing a complaint on April 4, 2003. The copy of the complaint is not available through the District Court's PACER access.

B.    No "Fourth Amended Complaint" has been filed by Debtor.

The District Court Docket, now spanning thirteen years, has 1,237 docket entries. That the "Fourth Amended Complaint" has not been filed is not surprising in that by the time Debtor wrote it, all such claims (to the extent they actually exist) are property of the bankruptcy estate (whether disclosed on the Schedules or not) and could only be prosecuted by the Chapter 7 Trustee.

The "litigation strategy" of Debtor in asserting the Opposition to the Bifurcated Objection is consistent with his previous conduct: (1) Make statements unsupported by law or evidence; (2) Take steps to delay proceedings and decisions; and, (3) Try to avoid any decisions being made by the court to stay locked in a litigation spiral with his opponents. This appears to be a "wear down the court and opponents" strategy not based on the merits of the issues or law (and not complying with the certifications and requirements of Federal Rule of Bankruptcy Procedure 9011), but merely litigation for the sake of litigation.

**Bifurcated Objection to Claim of Exemption Sustained**

The Bifurcated Objection to Claim of Exemption in the "malicious prosecution suit," the

asset specifically identified by Debtor on Schedule C, is sustained, and the exemption is disallowed in its entirety. As discussed above, Debtor has not shown that the "malicious prosecution suit" that has been settled by the Trustee is a "cause of action for personal injury" as required by California Code of Civil Procedure § 704.140. Further, Debtor has not shown and has not provided any credible evidence to support the court finding that any portion of the settlement, if it related to a "cause of action for personal injury" is "necessary for the support of" Debtor, or spouse and dependents of Debtor.

The court shall issue a separate order disallowed the claimed exemption.

Dated: February 14, 2017

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Aaron A. Avery<br>2150 River Plaza Drive, #450<br>Sacramento, CA 95833 | |