*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case No.  14-91565-E-7 |
| | ) | Docket Control No.  HSM-10 |
| RICHARD CARROLL SINCLAIR, | ) | |
| | ) | |
| Debtor. | ) | |
| ——————————————————— | ) | |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

### MEMORANDUM OPINION AND DECISION
### Denial of Motion to Reconsider Order Authorizing Compromise

Richard Sinclair ("Debtor") filed the current bankruptcy case on November 24, 2014 ("Bankruptcy Case"). Petition, Dckt. 1.  On January 9, 2017, the court issued its Memorandum Opinion and Decision granting a Motion for Approval of Compromise of Controversies ("Motion to Approve Compromise") entered into between Gary Farrar, the Chapter 7 Trustee ("Trustee"), as the first party, and Capital Equity Management Group, Inc., formerly known as California Equity Management Group, Inc.; New Century Townhomes of Turlock Owners Associations, formerly known as Fox Hollow of Turlock Owners' Association; and Andrew B. Katakis (collectively, "The Katakis Parties") as the parties settling with the Trustee. Dckt. 535.  The order granting the Motion to Approve Compromise ("Order") was entered on January 9, 2017.  Order, Dckt. 537.

The agreement between the Trustee and The Katakis Parties resolved claims of the estate against The Katakis Parties and provided for releases between the Trustee, bankruptcy estate, and The Katakis Parties.  In addition, the Trustee obtained a release for Debtor from The Katakis Parties for all claims except the obligation on the State Court Judgment issued in California Superior Court,

Stanislaus County, Case No. 332233 ("State Court Judgment"), Eastern District of California Case No. 03-cv-05439 ("District Court Action"), and adversary proceedings 15-9008, 15-9009, and 16-9008. The Katakis Parties paid the bankruptcy estate $40,000.00 as part of the agreement. The full terms of the agreement are stated in the Order granting the Motion to Approve Compromise and Settlement and Release Agreement attached thereto (the "Compromise"). Order, Dckt. 537.

On February 28, 2017, Debtor filed a motion for this court to reconsider ("Motion to Reconsider") this court's Order approving the Compromise. Motion to Reconsider, Dckt. 575.[1] Though no proof of service has been filed by Debtor, the parties to the Compromise have filed responses. This demonstrates to the satisfaction of the court that the pleadings were adequately served, notwithstanding the failure of Debtor to document such service.

Upon review of the Motion to Reconsider, supporting pleadings, evidence, oppositions, and files in this case, the court determines that Debtor has not provided the court with sufficient grounds to vacate, amend, or alter the prior findings, conclusions, and Order approving the Compromise.

**REVIEW OF MOTION TO RECONSIDER OR AMEND
FINDINGS AND ORDER APPROVING COMPROMISE**

On February 28, 2017, Debtor filed this Motion to Reconsider, claiming that "new or different facts and circumstances exist . . . that this Court had not considered." Dckt. 575, at 1. The Motion to Reconsider does not actually state with particularity (Fed. R. Bankr. P. 9013) the grounds upon which the relief is requested, but has them woven into the Points and Authorities and

---

[1] Debtor originally improperly joined a request to reconsider the Order approving the Compromise into an opposition in another contested matter. Opposition, Dckt. 538, filed January 11, 2017. This was two days after the entry of the order approving the compromise. The court extended the time for Debtor to properly refile such motion to the extent it is considered a motion for amended or additional findings pursuant to Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 9014, which motion has to be filed within 14-days of the entry of the judgment. Order, Dckt. 559.

As discussed in this Memorandum Opinion and Decision, in the present Motion to Reconsider Debtor does not state Federal Rule of Civil Procedure 52 as the basis for relief. Instead, for the current Motion Debtor cites the court to the California Code of Civil Procedure. 1008 in the motion and Federal Rules of Civil Procedure 59 and 60(b) in the second Points and Authorities.

Argument attached to the Motion to Reconsider.  Using the Argument and Points and Authorities

that are part of the Motion, the court distills the grounds that Debtor asserts to be:

A.   Debtor was not included in the negotiations that resulted in the Compromise approved by the court.

B.   Debtor believes that he has claims against The Katakis Parties for: (1) stalking since "extortion verbalizations" on February 2003.

C.   The Trustee did not obtain dismissals for Debtor for the State Court Judgment obtained by The Katakis Parties in *Mauctrust, LLC v. Katakis et al.*, California Superior Court, Stanislaus County, Case No. 332233, *aff'd* Cal. DCA 5th Cir. No. F058822 and Cal DCA No. F06497; and obtained by The Katakis Parties in *Fox Hollow of Turlock Owner's Association v. Sinclair*, E.D. Cal. Case No. 1:03-cv-054439.

D.   By settling the estate's claims which Debtor disclosed on his Schedules, the Trustee has taken away Debtor's "ammunition" to prosecute the alleged fraud of The Katakis Parties in obtaining the State Court Judgment.

E.   The Trustee and Court did not read the 2,000 pages of exhibits about what Debtor asserts are The Katakis Parties' and their attorney's "wrongful and unlawful action."

F.   Judge Sargis (this bankruptcy judge) "chastised Richard Sinclair for his fraudulent behavior even on February 23, 2017, but also had not heard or read Richard Sinclair's evidence."

G.   The court refused to rule on "motions" filed with the court.  (No specific "motions" are identified in the Motion now before the court.)

H.   Debtor asserts that since there is no time limit for asserting that fraud was committed on the state court, then the court should not let the Trustee settle any such possible claims.

I.   Debtor has been "disabled" since 2009, including "including 4 major surgeries and a stroke and the recovery periods for all."

J.   This bankruptcy court has found that Debtor was not disabled.  "No prior Court had followed what this Court said was required to not dfeny [sic] Richard Sinclair Due Process."

K.   Debtor did not assert any of these frauds on the State Court due to disabilities.

L.   Debtor states he suffered from a stroke in 2015.

M.   By Spring and Summer of 2016 Debtor had finally gathered evidence of the asserted fraud committed by The Katakis Parties and their attorney.

N.   No court has reviewed the "2000 pages of evidence" of such fraud.

O.   Debtor tried to file in 2016 a motion for fraud on the court, but it was blocked by The Katakis Parties.

P.   The Katakis Parties have committed criminal foreclosure which blocks the State

1    Court Judgment obtained by The Katakis Parties.

2    Q.    The judgments—the State Court Judgment and the recent judgment in the District
            Court Action—will continue to be owed by Defendant-Debtor (as nondischargeable
3            debt), even though the Trustee has settled the claims of the bankruptcy estate.

4    R.    The Katakis Parties have been "stalking" Debtor for 13 years, and will continue to
            do so with the State Court Judgment and the judgment in the District Court Action.
5

6    Motion to Reconsider, Dckt. 575.

7            In the Points and Authorities portion of the Motion to Reconsider, Debtor cites the court to

8    California Code of Civil Procedure 1008 as a basis for reconsidering the order granting the motion

9    and approving the Compromise. Dckt. 575. Debtor offers no explanation how the California Code

10   of Civil Procedure governs the procedures and powers of a federal court to reconsider a prior ruling.

11   Debtor, in a Second Points and Authorities (Dckt. 576) cites the court to Federal Rules of Civil

12   Procedure 59 and 60(b). Debtor does not cite to Federal Rules of Bankruptcy Procedure 7052,

13   9014(c), 9023, 9024 that apply when a person requests either a new trial or the court to "reconsider"

14   a prior order of the court in a bankruptcy case.[2]

15   **Evidence Submitted in Support of Motion**

16           Debtor has two main drumbeats to his argument. First, Debtor contends that the court

17   refuses to consider his evidence. Second, Debtor continues to assert that he has been disabled,

18   which precluded him from acting on the claims he now alleges exist. The court will address these

19   points in detail below.

20           Debtor provides his Declaration in support of the Motion to Reconsider. Dckt. 577. In it, he

21   states many personal factual findings and conclusions of law. As with his other contested matters

22   and adversary proceedings in this court, it is long on conclusions and dictates to the court, but short

23   on actual factual testimony. Fed. R. Evid. 601, 602.

24           The Declaration admits that "much time has passed" since the judgments were obtained

25   against Debtor through the alleged "fraud." Debtor testifies that The Katakis Parties acquired lots

26

27           [2] In this Memorandum Opinion and Decision the court references the Federal Rules of
     Civil Procedure as "Rule [number]" and the Federal Rules of Bankruptcy Procedure as
28   "Bankruptcy Rule [number]."

4

1  in the Fox Hollow Property by interfering with a contract that others had with GMAC to purchase

2  lots. This statement, as addressed below, is in direct conflict to the findings of fact and conclusions

3  of law in support of the State Court Judgment that has been affirmed on appeal. This court, applying

4  the doctrine of collateral estoppel, has accepted those findings and determinations in connection with

5  granting a motion for summary judgment in Adversary Proceeding 15-9009.

6          Debtor states that the State Court Judgment was obtained while he was disabled, arguing that

7  Judge Wanger in the District Court Action had made such a determination. Debtor asserts that The

8  Katakis Parties and their counsel then failed to disclose that disability to the judge in the State Court

9  Action. Debtor directs the court to Exhibit "93a," without identifying it in the Motion/Points and

10  Authorities. While there is no Exhibit "93a," there is Exhibit 93 - Judge Oliver Wanger's

11  February 5, 2010 Memorandum Opinion and Decision on: (1) motion to withdraw as counsel for

12  Debtor and (2) Debtor's motion for a continuance in the District Court Action. Dckt. 580. In that

13  Memorandum Opinion and Decision, based on Debtor's testimony and "notes" from a doctor, the

14  District Court concluded that "the fact that Mr. Sinclair is temporarily disabled does not, of itself,

15  preclude him from representing himself in *pro per*." Exhibit 93, p. 10:21–24; Dckt. 580. This

16  indicates that whatever "disability" that Debtor asserted, it was temporary and did not preclude

17  Debtor (who was a licensed attorney at the time) from participating in the District Court Action.

18          Debtor testifies that the alleged claims date back to 2003 and that Debtor communicated with

19  Mr. Katakis about them in 2003. Debtor cites the court to Exhibit 1. Exhibit 1 is a letter written on

20  Debtor's law firm letterhead dated January 27, 2003. Dckt. 578. In it Debtor asserts that a crime has

21  been committed and that if Mr. Katakis does not cease, Debtor will immediately (now fourteen years

22  ago) commence judicial action.

23          Debtor then testifies that he had a settlement with The Katakis Parties in 2007, which The

24  Katakis Parties breached in 2009 in obtaining the State Court Judgment. Thus, Debtor states, due

25  to the actions in 2007 and 2008, The Katakis Parties had caused Debtor harm in excess of

26  $12,425,000.00. Further, he alleges that in 2009 Debtor was aware of such claims.

27          Debtor argues that whatever The Katakis Parties allege is owed on the State Court Judgment

28  should be offset against $12,425,000.00 in claims that Debtor states are owed to him.

Debtor contends that this court (bankruptcy) denied him his Fifth and Fourteenth Amendment Rights because he was incompetent and disabled. Though the court considered the issue in 2015, Debtor testifies that now, in 2017, "I have written him for confirmation and will provide it at the hearing."

In his Declaration, Debtor further testifies that the misdealings include the following:

> The Court [not identifying what court] also managed to remove all evidence that Mr. Katakis, CEMG and Fox Hollow of Turlock, owe Richard Sinclair $ 12.425 million and that they have no damages. Further, that Mr. Katakis, is or was then, the owner of Fox Hollow of Turlock Owners Assocaition [sic] and Director and President and CEMG are or were both owned by Mr. Katakis and all have immense unclean hands.

Declaration, p. 7; Dckt. 577.

Debtor has filed Exhibits 1 through 107, Dckts. 578–83, totaling 1,803 pages. No index of exhibits is provided. Few of the Exhibits are authenticated in the declaration or other means. The cover pages to each of the exhibit documents state that they are filed as a "Request for Judicial Notice." However, no indication of how or why such documents are properly subject to judicial notice is provided. Federal Rule of Evidence 201 limits judicial notice to:

A.    Only an Adjudicative (not Legislative) Fact.

B.    That Cannot be Reasonably Disputed Because:

    1.    It is generally known within the trial court's territorial jurisdiction; or

    2.    Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

A sampling of the unindexed Exhibits includes the following:

A.    Exhibit 1 – January 27, 2003 Letter from Debtor to Mr. Katakis asserting claims against Mr. Katakis.   Dckt. 578, at p. 1-3.

B.    Exhibit 4 – Adjustable Rate Note dated July 6, 1988, Gregory Mauchley borrower. *Id.* at p. 85-96.

C.    Exhibit 9 – Contact History Report, Gregory Mauchley borrower. *Id.* at p. 107-122.

D.    Exhibit 40 - January 7, 2009 letter from Debtor to Bruce Inman re FHOA; copies of checks drawn on "Richard Sinclair Attorney at Law" named account; January 26, 2009 letter from Debtor to Andrew Katakis and Sherri Lucy; March 9, 2009 letter from Bruce Inman to Debtor; March 12, 2009 letter from Debtor to Bruce Inman; April 30, 2017 letter from Debtor to Bruce Inman; June 26, 2008 letter from Sherri

Lucy to Lairtrust, LLC; June 29, 2009 Letter from Bruce Inman to Debtor; July 30, 2009 Law Offices of Richard Sinclair Fax Cover Sheet to New Century Townhomes of Turlock and Sherri Lucy; August 7, 2009 letter from Debtor to Tracy Neal; August 17, 2009 letter from Debtor to Bruce Inman; August 26, 2009 Fax Call Report to Debtor; August 26, 2009 Telecopier Transmittal Cover Sheet From Debtor to Bruce Inman; September 24, 2009 letter from Bruce Inman to Debtor; and October 23, 2009 letter from Debtor to Bruce Inman. *Id.* at p. 260 - 283.

E.     Exhibit 53 – Articles of Incorporation of Fox Hollow of Turlock Owner's Association. Dckt. 579 at p. 3 - 26.

F.     Exhibit 57 – March 25, 2003 email from Andrew Katakis to Sue Hollingsworth; (substantially illegible) spread sheet; Email thread between Andrew Katakis and Sue Hollingsworth; (substantially illegible) spread sheet; "Fox Hollow of Turlock Owners' Association Assumptions Made for Accounting"; Email thread between Andrew Katakis and Jeff Bowman; [Illegible]7/03Handwritten note from Jeff Bowman to "Andrew"; "Fox Hollow of Turlock Owner's Association Summary of Accounting for Each Owner/Unit" from August 1, 2000 to December 31, 2002; March 27, 2003 handwritten note from Jeff Bowman to "Andrew"; "Fox Hollow of Turlock Owners' Association Summary of Accounting for Each Owner/Unit" from August 1, 2000 to December 31, 2002 with handwritten interlineations; "Fox Hollow of Turlock Owners' Association Summary of Accounting for Each Owner/Unit" from August 1, 2000 to December 31, 2002; March 31, 2003 delinquent payment list; February 6, 2004 CEMG Fax Transmittal cover sheet from Andrew Katakis to Sue Hollingsworth; "Fox Hollow of Turlock Owners' Association Summary of Accounting for Each Owner/Unit" with handwritten interlineations; February 4, 2004 The Management Alternative Fax to Andrew Katakis/CEMG; February 4, 4004 "Owner Ledger" addressed to Lair Trust, C/O Debtor; February 4, 2004 "Owner Ledger" addressed to Capstone LLC, C/O Debtor; February 5, 2004 Fax Cover Sheet from Timothy Ryan to Andrew Katakis; February 5, 2004 (fax time stamp) handwritten note; January 30, 2004 fax cover sheet from Linda Mayes to "Andrew"; Notice of Delinquent Assessment; Notice of Delinquent Assessment; February 7, 2004 email from Sue Hollingsworth to Andrew Katakis; February 7, 2004 email from Sue Hollingsworth to Andrew Katakis; "Fox Hollow of Turlock Owners' Association Accounting of Assessments and Collections" for August 1, 2000 through February 1, 2004 for "#101 - 103 owned by Mauctrust, LLC; Fox Hollow of Turlock Owners' Association Accounting of Assessments and Collections" for August 1, 2000 through February 1, 2004 for #104 - 106 owned by GMAC/Capstone Trust/Sinclair/Lair Tr; "Fox Hollow of Turlock Owners' Association Accounting of Assessments and Collections" for August 1, 2000 through February 1, 2004 for #133-135 owned by GMAC/Sinclair/Capstone LLC; February 7, 2004 email from Sue Hollingsworth to Andrew Katakis; February 7, 2004 email from Sue Hollingsworth to Andrew Katakis; March 21, 2003 handwritten note from Jeff Bowman to "Andrew"; "Fox Hollow of Turlock Owners' Association Summary of Accounting for Each Owner/Unit" for the period August 1, 2000 to December 31, 2002; March 8, 2003 Fax cover sheet from Sue Hollingsworth to Andrew Katakis; "Fox Hollow of Turlock Owners' Association Summary of Accounting for Each Owner/Unit" from August 1, 2000 to October 31, 2002; "Fox Hollow of Turlock Owners' Association Assumptions made for account" stamped "DRAFT"; March 8, 2003 fax "Transmission Verification Rep[illegible]"; March 8, 2003 fax cover sheet from Sue Hollingsworth to Andrew Katakis; "Fox Hollow of Turlock Owners' Association Summary of Accounting for Each Owner/Unit" from August 1, 2000 to October 31, 2002; "Fox Hollow of Turlock Owners' Association Assumptions made for account" stamped "DRAFT"; "Fox Hollow of Turlock Owners' Association Summary of Accounting for Each Owner/Unit" from August 1, 2000 to December

31, 2002; March 8, 2003 fax transmission verification report; and "Fox Hollow of Turlock Owners' Association Summary of Accounting for Each Owner/Unit" from August 1, 2000 to December 31, 2002. *Id.* at p. 133 - 189.

G.      Exhibit 69 – January 29, 2004 letter from Sherri Lucy to "Owner"; April 9, 2003 certified letter from [illegible] • Ryan • Weifenbach to Capstone, LLC and "Property Owner"; January 7, 2004 letter from Timothy Ryan to Michael Abbott; Copy of Notice of Default [illegible]; November 4, 2003 "Debt Validation Notice" [unidentified sender and unidentified recipient]; and August 26, 2003 letter from Sherri Luch to "Owner." *Id.* at 246 - 252.

H.      Exhibit 74 – September 13, 2002 dated Agreement for Purchase and Sale of Promissory Notes and Real Property: California Equity Management Group, Inc., Buyer, and Contimortgage Corporation, seller. *Id.* at 315 - 329.

I.      First Exhibit 81 – Portion of Transcript from [unidentified] hearing. Dckt. 580, p. 7 - 34.

J.      Second Exhibit 81 - "Neighborhood Demographics" report for 152 20th Century Blvd., Apt. 105, Turlock California. *Id.* at 37 - 50.

K.      Exhibit 94-1– June 18, 2002 letter from Debtor to Andrew Katakis. Dckt. 581 at p. 4.

L.      Exhibit 94-2 – August 8, 2002 letter from Debtor to Andrew Katakis and CEMG. *Id.* at p. 6

M.      Exhibit 94-3 – November 8, 2002 Letter from Debtor to Andrew Katakis stating that he and his clients are "anxious to proceed with the litigation." *Id.* at 8.

N.      Exhibit 95 [no exhibits 96 or 97 identified] – December - October 2007 emails of Dan Truax, Debtor, Andrew Katakis, Tim Ryan, Brent Medearis. *Id.* at 101 - 307.

The exhibits also include long letter strings and email threads of various communications. For recorded documents included as exhibits, they are neither certified nor authenticated by any witnesses. Fed. R. Evid. 901, 902. It is unclear which, if any, of the exhibits qualify for "judicial notice" as permitted by Federal Rule of Evidence 201.

Rather, it appears that the Exhibits are a large "document dump" on the court. These documents well predate not only the hearing on the Motion to Approve the Compromise in 2017, but the filing of the Bankruptcy Case in 2014, and the State Court Judgment in 2009—with some dating back to the 1990's.

**REVIEW OF TRUSTEE'S OPPOSITION**

Gary Farrar, the Chapter 7 Trustee, filed an Opposition to this Motion to Reconsider on March 30, 2017. Dckt. 613. The Trustee asserts that the Motion to Reconsider suffers from both

procedural and substantive defects.

On the procedural side, the Trustee argues that Debtor has ignored the Local Bankruptcy Rules for the preparation of documents by combining multiple documents into one filing and by omitting a Docket Control Number on the motion. The Trustee argues that the consistent procedural deficiencies in Debtor's filings, especially after being warned to correct them by the court, are enough to deny the Motion to Reconsider.

Substantively, the Trustee notes that the Motion to Reconsider does not clearly state whether it is based upon Rules 57, 59(e), or 60(b), but should be denied under any of these Rules. The Trustee states that "[r]ather than articulating a basis for reconsideration . . . , the Debtor's Motion simply restates and rehashes many of the same arguments, or variations of the same arguments, he has previously made about the alleged misdeeds of Mr. Katakis and his entities." Dckt. 613, at 3. The Trustee emphasizes that Debtor had ample time and opportunity to oppose the original motion for approval of compromise—which Debtor in fact did oppose. To the Trustee, the current Motion to Reconsider is just Debtor seeking "another bite at the apple in challenging the merits of the approved compromise." Dckt. 613, at 3.

Additionally, the Trustee notes that Debtor has not presented any newly discovered evidence or intervening change in controlling law, and he stresses that Debtor's disagreement with the court's determination of fairness and equity does not amount to the court's order approving the compromise being "clearly erroneous."

The Trustee stresses that neither Debtor nor his family members offered to "overbid" the amount for the claims at issue at the December 15, 2016 hearing. At this point, the court observes that while the Trustee uses the term "overbid" with respect to the hearing on the Motion to Approve the Compromise, that terminology is not correct.

**Right of First Refusal Given Debtor and His Allies**

To afford Debtor and his "allies" the opportunity to preserve the asserted $40 Million asset that Debtor asserts now exists, the court gave them the option to exercise a right of first refusal to purchase all of the asserted $40 Million of claims for the $40,000.00 offered by The Katakis Parties, which Debtor believed the Trustee was significantly undervaluing. Memorandum Opinion and

1    Decision for Motion to Approve Compromise, Dckt. 535; Order providing for right of first refusal,

2    Dckt. 499.   The court's "allies" in this Bankruptcy Case are identified as Debtor's wife, Deborah

3    Sinclair, and Debtor's sister, Kathryn Machado, PhD ("Dr. Machado").  Dr. Machado is the trustee

4    of Debtor's purported irrevocable trust and the managing member of limited liability companies, all

5    having received significant transfers of assets from Debtor prior to his commencing the Bankruptcy

6    Case.  Debtor's wife also received significant assets by pre-petition transfers under a purported

7    marital settlement agreement (it being reported to the court that there has been no dissolution of the

8    marriage).

9         Dr. Machado, as the trustee/managing member, and Debtor appeared at the hearing for the

10   motion to approve the obtained by the Trustee with The Katakis Parties.  As addressed by this court

11   in the Memorandum Opinion and Decision   (Dckt. 535) granting the Motion to Approve

12   Compromise, if these claims were worth significantly more than the $40,000.00 Compromise

13   amount (as asserted by Debtor), then either Debtor's wife or sister would likely have purchased such

14   claims using the significant assets transferred to them by Debtor.  Neither took advantage of such

15   rights of first refusal.  When pressed on the point at the hearing, Dr. Machado's counsel advised the

16   court that all Dr. Machado wanted was to be done with the Debtor's bankruptcy proceedings and

17   not have to come back to the bankruptcy court.

18                    **REVIEW OF THE KATAKIS PARTIES' OPPOSITION**

19        The Katakis Parties filed a Memorandum of Points and Authorities in Opposition to the

20   Motion to Reconsider on March 30, 2017. Dckt. 616.  The Katakis Parties argue first that Debtor

21   failed to plead any relief pursuant to Bankruptcy Rules 7052 and 9014 like the court directed in its

22   February 14, 2017 order.

23        Similar to the Trustee, The Katakis Parties argue that Debtor "has totally failed to establish

24   the grounds for reconsideration such as newly discovered evidence that is material to the decision."

25   Dckt. 616, at 8.  The Katakis Parties insist that Debtor has merely reargued the prior opposition to

26   the original Motion to Approve Compromise.

27        The Katakis Parties assert that Debtor has abandoned his court-offered option to request that

28   the court amend its order granting approval of compromise pursuant to Bankruptcy Rule 7052.

1　Having not pursued this Motion to Reconsider on that ground, The Katakis Parties claim that Debtor

2　has completely failed to properly pursue this Motion to Reconsider procedurally, and even if he had,

3　Debtor has not presented any authorized grounds for the court to reconsider its original order.

4　　　　Throughout the Opposition, The Katakis Parties reassert its responses to Debtor's arguments

5　from the original motion—which have been restated in the present Motion to Reconsider—and

6　pleads that Debtor has not presented anything new for the court to consider now but has instead

7　continued with his improper litigation strategy of arguing whatever he wants over and over again

8　despite the court telling him that he is wrong and that his arguments are improper.

9　　　　　　　　　　　　　　　**APPLICABLE LAW**

10　　　　The relief requested by Debtor can be read as seeking relief pursuant to Rule 60(b), as made

11　applicable by Bankruptcy Rule 9024, which governs the reconsideration of a judgment or order.

12　This is the federal law governing proceedings in federal court that is analogous to the inapplicable

13　citation to California Code of Civil Procedure 1008 in Debtor's Motion/Points and Authorities.

14　Grounds for relief from a final judgment, order, or other proceeding are limited to:

15　　　(1)　　mistake, inadvertence, surprise, or excusable neglect;

16　　　(2)　　newly discovered evidence that, with reasonable diligence, could not have been
17　　　　　　discovered in time to move for a new trial under Rule 59(b);

18　　　(3)　　fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
　　　　　　misconduct by an opposing party;

19　　　(4)　　the judgment is void;

20　　　(5)　　the judgment has been satisfied, released, or discharged; it is based on an earlier
21　　　　　　judgment that has been reversed or vacated; or applying it prospectively is no longer
　　　　　　equitable; or

22　　　(6)　　any other reason that justifies relief.

23　FED. R. CIV. P. 60(b). A Rule 60(b) motion may not be used as a substitute for a timely appeal.

24　*Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 (5th Cir. 1993). The court uses equitable

25　principles when applying Rule 60(b). *See* 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE

26　AND PROCEDURE § 2857 (3d ed. 1998). The so-called catch-all provision, Rule 60(b)(6), is "a grand

27　reservoir of equitable power to do justice in a particular case." *Uni-Rty Corp. v. Guangdong Bldg.,*

28　*Inc.*, 571 F. App'x 62, 65 (2d Cir. 2014) (citation omitted). While the other enumerated provisions

1  of Rule 60(b) and Rule 60(b)(6) are mutually exclusive, relief under Rule 60(b)(6) may be granted

2  in extraordinary circumstances. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 &

3  n.11 (1988).

4       A condition of granting relief under Rule 60(b) is that the requesting party show that there

5  is a meritorious claim or defense. This does not require a showing that the moving party will or is

6  likely to prevail in the underlying action. Rather, the party seeking the relief must allege enough

7  facts that, if taken as true, allow the court to determine if it appears that such defense or claim could

8  be meritorious. 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶¶ 60.24[1]–[2] (3d ed.

9  2010); *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

10      When reviewing a motion under Rule 60(b), courts consider three factors: "(1) whether the

11  plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether

12  culpable conduct of the defendant led to the default." *Falk*, 739 F.2d at 463 (citations omitted).

13      Additionally, the finality of judgments is an important legal and social interest. The standard

14  for determining whether a Rule 60(b)(1) motion is filed within a reasonable time is a case-by-case

15  analysis. The analysis considers "the interest in finality, the reason for delay, the practical ability

16  of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Gravatt v.*

17  *Paul Revere Life Ins. Co.*, 101 F. App'x 194, 196 (9th Cir. 2004) (citations omitted); *Sallie Mae*

18  *Servicing, LP v. Williams (In re Williams)*, 287 B.R. 787, 793 (B.A.P. 9th Cir. 2002) (citation

19  omitted).

20  **Rule 59, Bankruptcy Rule 9023**

21      Alternatively, the cases Debtor cites, such as *In re Oak Park Calabasas Condo. Ass'n*, 302

22  B.R. 682 (Bankr. C.D. Cal. 2003), address Rule 59 which governs seeking a new trial or amending

23  a judgment. Rule 59 and Bankruptcy Rule 9023. Rule 59 provides:

24      Rule 59. New Trial; Altering or Amending a Judgment

25      (a) In General.

26          (1) Grounds for New Trial. The court may, on motion, grant a new trial on
           all or some of the issues–and to any party–as follows:

27

28              (A) after a jury trial, for any reason for which a new trial has
               heretofore been granted in an action at law in federal court; or

12

(B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

(2) Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

*In re Oak Park Calabasas Condo. Ass'n* states that a motion for reconsideration brought under Rule 59 "should not be granted unless it is based on one or all of the following grounds: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) to allow the moving party the opportunity to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) to reflect an intervening change in controlling law." *In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. at 683. That court defined "manifest injustice" as "an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." *Id.* "Manifest error" was defined as "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Id.* A similar application of Rule 59 is followed in this District. *See Barboza v. Cal. Ass'n of Prof'l Firefighters*, No. CIV. S-08-519 FCD/GGH, 2009 U.S. Dist. LEXIS 77737, at *6–7 (E.D. Cal. Aug. 14, 2009).

The authority cited by Debtor is consistent with this strict interpretation of Rule 59, the district court stating in *DMG Investments, Inc. v. New York Futures Exchange, Inc.*, 288 F. Supp. 519, 523   (S.D. N.Y. 2003) stating that relief under Rule 59 "must be 'narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.' *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098, 2001 U.S. Dist. LEXIS 3165 (S.D.N.Y. Mar. 21, 2001)."

As addressed by the D.C. Circuit Court of Appeals in *Grumman Aircraft Eng'g Corp. v. Renegotiation Board*, 482 F.2d 710,721 (1973):

Ordinarily Rule 59 motions for either a new trial or a rehearing are not granted by the District Court where they are used by a losing party to request the trial judge to reopen proceedings in order to consider a new defensive theory which could have been raised during the original proceedings. *Echevarria v. United States Steel Corp.*, 7 Cir., 392 F.2d 885, 892 (1968); *Rue v. Feuz Construction Co.*, D. D.C., 103 F. Supp. 499, 502 (1952). See also 6A J. MOORE, FEDERAL PRACTICE para. 59.07 (1972). . . .

13

**Rule 52, Bankruptcy Rules 7052, 9014(c)**

Though it appears that Debtor has not based his arguments on Rule 52 as he did in his original pleading, the court considers that avenue as well. Rule 52 provides:

> Rule 52. Findings and Conclusions by the Court; Judgment on Partial Findings
> . . .
> (b) Amended or Additional Findings. On a party's motion filed no later than [14 days as specified in Bankruptcy Rule 7052] days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Consistent with the application of the above discussed Rules, using Rule 52 to amend a prior judgment or findings is not a device to try and merely relitigate what was presented at trial or to implement a new strategy after having lost at trial.

> Clearly, **Rule 52(b)** merely provides a method for 'amplifying and expending the (findings of fact),' and **is not intended as a vehicle for securing a rehearing on the merits**. *Matyas v. Feddish*, D.C.M.D. Pa.1945, 4 F.R.D. 385, 386; *Canister Co. v. National Can Corp.*, D.C.D.Del.1946, 71 F.Supp. 49; *cf. Fiske v. Wallace*, 8 Cir., 1940, 115 F.2d 1003; *Reinstine v. Rosenfeld*, 7 Cir., 1940, 111 F.2d 892, 894.

*Heikkila v. Barber*, 164 F. Supp. 587, 592 (N.D. Cal. 1958) (emphasis added). Moore's Federal Practice - Civil § 52.60[3] provides a discussion of Rule 52(b) not merely being a device for advancing new theories or attempting a rehearing on the merits. Rather, it is to allow the trial court to correct a manifest error of law or fact. *See United States v. Local 1804-1, International Longshoremen's Ass'n*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993); *Clark v. Nix*, 578 F. Supp. 1515, 1516 (S.D. Iowa 1984). A party who fails to present evidence at the hearing or trial cannot use Rule 52(b) for a second try at the litigation. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1220 (5th Cir. 1986); *Diebitz v. Arreola*, 834 F. Supp. 298, 302 (E.D. Wis. 1993).

## DISCUSSION

In addressing the Motion to Reconsider and the contentions of Debtor, the court again notes that Debtor is an attorney who was formerly licensed to practice law in the State of California. Though disbarred, this court has concluded, and continues to conclude, that Debtor is a highly educated, experienced attorney and business person. *See* 14-91565; Memorandum Opinion and Decision, Dckt. 535. He is highly capable of presenting his positions, advocating his arguments, and fully engaging the judicial process. This court has reviewed the extensive, almost two decades

14

long, battles between The Katakis Parties and Debtor, in two recent decisions.

The first is the Memorandum Opinion and Decision granting the Motion to Approve Compromise that is now at issue in the Motion to Reconsider. Dckt. 535. The second is this court's Memorandum Opinion and Decision sustaining the Chapter 7 Trustee's objection to Debtor's claim of a personal injury exemption in the "malicious prosecution suit" (term as used by Debtor on Schedules B and C filed under penalty of perjury) against Katakis Plaintiffs. Dckt. 558. Those decisions contain extensive discussions of the litigation between The Katakis Parties and Debtor, as well as Debtor's general litigation strategy.

As concluded by the court in the two Memorandum Opinions and Decisions referenced above, Debtor has manifested in this court a litigation strategy of saying whatever he believes to be to his advantage, without regard to it being legally or factually supportable. The prominent part of Debtor's (who it must be remembered is a highly educated, experienced attorney, notwithstanding having been disbarred) litigation strategy is to delay, deter, and prevent the court from addressing matters on the merits, working hard to stay in what the court has characterized as a "litigation death spiral" with The Katakis Parties.

**Asserted Disability**

Debtor contends that he has been deprived of his Constitutional and substantive law rights because he has been, and possibly is, "disabled." The alleged disability was thoroughly considered by this court and determined to be false. This "disability" contention is little more than a dodge raised by Debtor whenever the litigation he spawns turns negative for him—while Debtor appears to have no disability during the same period as he continues his litigation against others. As previously stated and has occurred in connection with the present Motion to Reconsider, the court has concluded that Debtor does not present the court with any credible evidence of any alleged disability. As stated by the court at the hearing, "the court does not believe the Debtor" when he purports to have been disabled these many years. His assertions are not consistent with the evidence and objective facts presented to the court.

The court issued a detailed decision concluding that Debtor was competent and that the purported disability was a sham. Civil Minutes, Dckt. 337. While professing a "disability," Debtor

1    was actively prosecuting the Bankruptcy Case.  Debtor appeared to be "disabled" only with respect

2    to the U.S. Trustee attempting to have the case converted and The Katakis Parties conducting

3    discovery.  The court findings in the Civil Minutes recount the conduct of Debtor that was

4    inconsistent with the professed disability. *Id.*

5         In the Memorandum Opinion and Decision approving the proposed Compromise between

6    The Katakis Parties and the Chapter 7 Trustee, this court addressed not only Debtor's use of an

7    alleged "disability" to delay judicial  proceedings, but Debtor's conscious litigation strategy of

8    asserting claims, rights, and defenses, without regard to whether they had any legal merit or were

9    supported by facts, so long as they fit within his narrative to advance his position. Memorandum

10   Opinion and Decision, pp. 14:27–20:16,  Dckt. 535.

11        In  the Memorandum Opinion and Decision granting the Motion for Summary Judgment in

12   *The Katakis Parties v. Sinclair* (Adv. No. 15-9009, Dckt. 107), this court again extensively

13   discussed the alleged "disability" asserted by Debtor.  As now, the court looks back on Debtor's

14   repeated failures to provide this court in the Bankruptcy Case with any credible evidence of any

15   disability.  The court also recounts the extraordinary steps taken by the court to ensure that if a

16   disability existed (as opposed to merely a strategy to delay rulings of the court and abuse the judicial

17   process), Debtor's doctors would come forward for him.

18        As discussed in the above Memorandum Opinion and Decision, when Debtor asserted that

19   disabilities existed in the Summer and Fall of 2015, the court repeatedly requested that Debtor have

20   his doctors who professed Debtor was disabled to come forward (as opposed to Debtor merely

21   testifying what he said the doctors said to him) and provide the court with the necessary expert

22   testimony.  No doctors ever came forward and no testimony or other information was provided to

23   the court – other than Debtor stating that he was disabled and the proceedings had to be stayed.

24        In addition to repeatedly telling Debtor (who is a highly educated, experienced attorney) that

25   testimony from the doctor was required, the court went even further.  This court, to the extent that

26   a disability might have actually existed and Debtor was unable to communicate the need to his

27   doctor for such expert testimony, instructed the Clerk of the Court to send a copy of the detailed

28   order identifying the need for such information to the doctor identified by Debtor.  October 9, 2015

1  Order, Dckt. 275. The order expressly requested that the doctor purported to be treating Debtor

2  provide such information, which action would appear to be consistent with that doctor's obligations

3  to his or her patient if Debtor actually suffered from such alleged disability. No doctor stepped

4  forward to present such information in support of the alleged disability asserted by Debtor.

5        Throughout the Bankruptcy Case proceedings, at Debtor's side was Kathryn Machado, PhD,

6  his sister who is the identified trustee of Debtor's asserted irrevocable trust and managing member

7  of limited liability companies into which Debtor transferred property pre-petition. If Debtor was

8  actually incapacitated, Dr. Machado would have gone to state court to have a conservator appointed

9  for him or sought a personal representative appointed in federal court.

10        Not only did the sister not do this, but she was so confident in his competency that she had

11  Debtor represent her in the Bankruptcy Case up until the time he was initially suspended from the

12  practice of law in July 2015 (which, not coincidently, is when Debtor professed to have a

13  "disability" arise that warranted the Bankruptcy Case proceedings stayed). Dr. Machado had Debtor

14  defending her as trustee and managing member for the pre-petition transfers Debtor made in the trust

15  and the limited liability companies. Then, even after he had been suspending from the practice of

16  law (pending his February 2016 disbarment), Dr. Machado had Debtor by her side "advising" her

17  for several months after his suspension until the court required her to obtain counsel (since a trust

18  and limited liability companies were the actual parties, not her individually in *pro se*).

19        Further, while contending that he was or has been "disabled," Debtor actively prosecuted a

20  36-day trial against The Katakis Parties, the first appeal of that state court decision in 2009, the

21  motion for award of attorneys' fees for The Katakis Parties in the State Court Action, the second

22  appeal of the State Court Judgment for the attorney's fees awarded, and then this Bankruptcy Case

23  as the Chapter 11 debtor in possession.

24  **Reported Cases, Published or Unpublished, on LEXIS-NEXIS**

25        Debtor's repeated, unsupported other than by his own statements or conclusions, assertion

26  that he has been disabled apparently for years piqued the court's curiosity as to what is readily

27  accessible on LEXIS-NEXIS or WESTLAW for cases in which Debtor has been a party or attorney

28  since 2009. When the court posted on its website the tentative ruling on the Motion to Reconsider

the day before the May 4, 2017 hearing, it included the many matters listed below in which Debtor

was identified as the attorney for a party or an active litigant in the proceeding. No dispute was

raised by Debtor at the hearing as to the accuracy of this information.

A review of LEXIS-NEXIS (which are only bankruptcy court, district court, and state

appellate court proceedings; this court not having gone to the individual official superior court

websites to check the superior court cases) discloses the following:

A.    *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2017 U.S. Dist. LEXIS 49638.

      1.    March 31, 2017 Denial of Motion to Reconsider Decision and to enter judgment for The Katakis Parties against Debtor under RICO and breach of CC&Rs for $5,833,175.84.

B.    *Sinclair on Discipline*, Cal. Supreme No. S230942, 2016 Cal. LEXIS 3065.

      1.    February 17, 2016 Supreme court order disbarring Debtor from the practice of law after conclusion of the State Bar Court proceedings.

C.    *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2015 U.S. Dist. LEXIS 111881.

      1.    August 24, 2015 Order denying Debtor's motion for new trial.

D.    *Hetrick v. Deutsche Bank National Trust Company*, Cal. Dist. Ct. App. No. F067675; 2014 Cal. App. Unpub. LEXIS 8467.

      1.    November 24, 2014 Opinion affirming summary judgment against Debtor (as attorney for the plaintiff in the underlying action)

E.    *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2014 U.S. Dist. LEXIS 161694.

      1.    November 18, 2014 Order denying Debtor's motion for new trial and for entry of final judgment.

F.    *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2014 U.S. Dist. LEXIS 136490.

      1.    September 25, 2014 Order adopting findings and recommendations of magistrate judge denying Debtor's motion for leave to amend court schedule and to reinstate dismissed counterclaim. Sanctions dismissing counterclaim dated back to 2011.

G.    *Mauctrust, LLC v. Truax*, Cal. Dist. Ct. App. No. C069486, 2014 Cal. App. Unpub. LEXIS 4879.

      1.    July 11, 2014 Opinion reversing demurrer to Debtor's (as a party and attorney for other parties) complaint.

H.     *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2014 U.S. Dist. LEXIS 44842.

     1.     March 31, 2014 Order denying Debtor's (as attorney for other parties) to apply res judicata from the State Court Action.

I.     *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2013 U.S. Dist. LEXIS 49905.

     1.     April 5, 2013 Order $4,600 of sanctions to be paid by Debtor.

J.     *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2013 U.S. Dist. LEXIS 45971.

     1.     March 29, 2013 Order denying Debtor's motion to enforce purported 2007 settlement.

K.     *Sinclair v. Katakis*, Cal. Dist. Ct. App. No. F058822, 2013 Cal. App. Unpub. LEXIS 509.

     1.     January 23, 2013 Opinion affirming judgment obtained by The Katakis Parties against Debtor.

L.     *Sinclair v. Katakis*, Cal. Dist. Ct. App. No. F060497, 2013 Cal. App. Unpub. LEXIS 502.

     1.     January 23, 2013 Opinion affirming $750,000 attorney's fee in favor of The Katakis Parties and against Debtor.

M.     *Stein v. Bank of America, N.A.*, E.D. Cal. 10-cv-02827, 2012 U.S. Dist. LEXIS 179847.

     1.     December 18, 2012 Order dismissing action, for which Debtor was the attorney for plaintiff, with prejudice and to notify State Bar that Debtor failed to pay previously ordered monetary sanctions and "repeated failure to respond to the Court's orders."

N.     *Stein v. Bank of America, N.A.*, E.D. Cal. 10-cv-02827, 2012 U.S. Dist. LEXIS 166628.

     1.     November 21, 2012 Order denying Debtor's motion (as counsel for Plaintiff) to compel discovery and extend discovery.

O.     *Fox Hollow of Turlock Association v. Mauctrust, LLC*, E.D. Cal. 1:03-cv-5439, 2012 U.S. Dist. LEXIS 141080.

     1.     September 28, 2012 Order: (1) Denying Debtor's motion to reconsider denial of his prior motion in April 2011 (Debtor stating that he was in "[a]n ongoing San Francisco Superior Court trial" ); (2) Enforcing prior order that Debtor could not represent certain other persons in the action due to conflicts of interest; (3) Denial of request for sanctions against Debtor, but stating, "Richard Sinclair and other Defendants are warned that all court orders must be obeyed or serious sanctions (both monetary and litigation) are likely in the future"; (4) Ordering Debtor to comply with order for production of documents.

P.   *Van Upp v. Van Upp*, N.D. Cal. No.11-04408, 2012 U.S. Dist. LEXIS 102283.

    1.   July 23, 2012 Order on appeal affirming bankruptcy court order denying Debtor's motion (as counsel for appellant) to dismiss bankruptcy case.

Q.   *Carrasco v. HSBC Bank USA, N.A.*, N.D. Cal. No. C-11-2711, 2012 U.S. Dist. LEXIS 28096.

    1.   March 2, 2012   Order dismissing Debtor's (as counsel for plaintiff) complaint for lack of federal court jurisdiction and failure to state a claim.

R.   *Carrasco v. HSBC Bank USA, N.A.*, N.D. Cal. No. C-11-2711, 2012 U.S. Dist. LEXIS 25496.

    1.   February 28, 2012 Order denying Debtor's (as attorney for plaintiff) motion for temporary restraining order.  The grounds for denying the motion included: (1) lack of jurisdiction and (2) failure to show basis on the merits.

S.   *Van Upp v. Wendel, Rosen, Black and Dean, LLP (In re Van Upp)*, N.D. Cal. No. 11-00178, 2011 U.S. Dist. LEXIS 97794.

    1.   August 30, 2011 Order on appeal affirming bankruptcy court order on trustee fees and overruling opposition of Debtor (as attorney for appellant debtor).

T.   *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2011 U.S. Dist. LEXIS  89115.

    1.   August 10, 2011 Order compelling Debtor to produce documents.  In the order the court notes that the "Court has previously ruled on the exact issues presented in this motion. Nonetheless, Mr. Sinclair, in his supposed representation of Lairtrust and Capstone, continues to make the same baseless objections."

U.   *Stein v. Bank of America, N.A.*, E.D. Cal. 10-cv-02827, 2011 U.S. Dist. LEXIS 84724.

    1.   August 1, 2011 Order dismissing Debtor's (as attorney for plaintiff) complaint for failure to state a claim, with leave to amend.

V.   *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2011 U.S. Dist. LEXIS 69199.

    1.   June 28, 2011 Order requiring Debtor (as attorney for defendants/counter claimants) to file more definite statement for twelve causes of action counterclaim he filed.

W.   *Fox Hollow of Turlock Association v. Mauctrust*, LLC, E.D. Cal. 1:03-cv-5439, 2011 U.S. Dist. LEXIS 68558.

    1.   June 27, 2011 Order denying Debtor's second motion to disqualify opposing counsel.  The court concluding, "Simply stated, Mr. Sinclair's perceived wrongs effected by Mr. Durbin and Mr. Dunn do not alter the relevant facts upon which this Court's prior rulings were based. Mr. Sinclair's attempt to disqualify Mr. Durbin and Mr. Dunn based on the same legal theories and without new, relevant factual information, convinces the Court that this

1       motion is yet another attempt to delay these proceedings and/or increase the
        costs of litigation in violation of Federal Rule of Civil Procedure 11(b)."

2

3    X.    *Fox Hollow of Turlock Association v. Mauctrust, LLC*, E.D. Cal. 1:03-cv-5439, 2011
          U.S. Dist. LEXIS 59418.

4          1.    June 3, 2011 Order compelling Debtor to respond to discovery.  The court
                also awarded sanctions fo $3,886.00 in sanctions to be paid by Debtor,

5                concluding "Defendants [Debtor and his son]  have not acted in good faith
                in attempting to resolve this dispute and their responses to discovery were not

6                substantially justified."

7    Y.    *Fox Hollow of Turlock Association v. Mauctrust, LLC*, E.D. Cal. 1:03-cv-5439, 2011
          U.S. Dist. LEXIS 46272.

8
           1.    April 28, 2011 Order staying Debtor from prosecuting claims under asserted
9                2007 settlement.

10   Z.    *In re Van Upp*, N.D. Cal. No. 10-01699, 2011 U.S. Dist. LEXIS 36703.

11         1.    March 25, 2011 Order dismissing appeal filed by Debtor (as counsel for
                appellant) for failure to prosecute.

12

13   AA.   *Stein v. Bank of America, N.A.*, E.D. Cal. 10-cv-02827, 2011 U.S. Dist. LEXIS
          17658.

14         1.    February 22, 2011 Order dismissing Debtor's (as attorney for plaintiff)
                causes of action from complaint for failure to state a claim, with leave to

15               amend.

16   BB.   *Fox Hollow of Turlock Association v. Mauctrust, LLC*, E.D. Cal. 1:03-cv-5439, 2011
          U.S. Dist. LEXIS 5842.

17
           1.    January 20, 2011 Order staying Debtor's (as attorney) cross-claims pending
18               resolution of the State Court Action.

19   CC.   *Unlu v. Wells Fargo Bank, N.A.*, N.D. Cal. No. 10-05422, 2011 U.S. Dist. LEXIS
          2343.

20
           1.    January 7, 2011 Order denying Debtor's (as attorney for plaintiff) motion for
21               temporary restraining order.

22   DD.   *In re Van Upp*, N.D. Cal. No. 10-01699, 2010 U.S. Dist. LEXIS 142473.

23         1.    December 21, 2010 Order denying Debtor's (as attorney for debtor) motion
                for the district court to withdraw the reference of that debtor's bankruptcy

24               case from the bankruptcy court.

25   EE.   *Sinclair v. Fox Hollow of Turlock Owners Association*, E.D. Cal. No. 03-cv-05439,
          2010 U.S. Dist. LEXIS 134488.

26
           1.    December 20, 2010 Order denying Debtor's (as party and attorney for other
27               defendants) motion to dismiss the complaint.

28

FF.    *Van Upp v. Bradlow*, N.D. Cal. No. 10-02559, 2010 U.S. Dist. LEXIS 113953.

      1.    October 26, 2010 Order dismissing Debtor's (as attorney for plaintiff) complaint for a lack of jurisdiction.

GG.    *In re Sargent*, Cal. Dist. Ct. App. No. F057141, 2010 Cal. App. Unpub. LEXIS 8357.

      1.    October 21, 2010 Opinion affirming judgment against Debtor (as counsel for appellant).

HH.    *Fox Hollow of Turlock Owners' Association v. Sinclair*, E.D. Cal. 03-5439, 2010 U.S. Dist. LEXIS 10420.

      1.    February 5, 2010 Order granting Debtor's motion for a continuance to March 1, 2010, and to allow law firm to withdraw from representing Debtor and other parties.

II.    *In re Van Upp*, Bankr. N.D. Cal. No. 09-31932, 2010 Bankr. LEXIS 2382.

      1.    July 19, 2010 Order denying Debtor's (as attorney for debtor) motion to dismiss the bankruptcy trustee.

Contrary to Debtor's contention that he has been disabled since 2009, the above district court and appellate cases demonstrate an active law practice and litigation during that time.

The court continues to determine that the asserted "disability" is a sham and fraud being perpetrated by Debtor.

### Comparison of Opposition Presented to Motion to Approve Compromise
### To Grounds Stated in Motion to Reconsider

In response to the Trustee's Motion to Approve Compromise, Debtor filed his 13-page Opposition on December 1, 2016. Dckt. 487. In Debtor's December 1, 2016 Opposition, his assertions include (and are not limited to):

A.    "-Compromise is not fair and equitable."

B.    "-Compromise included all parties, but the Debtor, who was specifically left out and was the only one who knows the debtors [sic] side of the story."

C.    "-Settlement is $40,000 -- we are claiming an actual loss of $40 million."[3]

D.    "The settlement is equal to .1% of the claim." Debtor asserts that the settlement does not meet the "Woodson Standards."

E.    "-The case does not meet the 'fair and equitable' requirements." Debtor asserts that

---

[3] Debtor does make the reference to "we" in stating that the value is $40 Million. He does not identify the "we."

the Trustee failed to show the court that the $40,000 settlement was "fair and equitable." Debtor asserts, "Here the is 'NO' [sic] reasoned analysis" by the Trustee as to why the Compromise is fair and equitable.

F.      Debtor argues that in *In re A&C Properties* the bankruptcy judge reviewed over 4,000 pages and 1,000 pages of reporter's transcripts before determining the proposed settlement was proper.

G.      "We have submitted a 60d motion for fraud on the 332233 case [which is State Court Action in which the final State Court Judgment has been entered and affirmed on appeal, not a federal case in which Rule 60 applies] and Mr. Durbin blocked it. . . ." (Again, the "we" is not identified.)

H.      Debtor asserts that with respect to further pursuing further litigation in the State Court Action, "[t]he Trustee does not want to participate, but I am the one who submitted the motion and all the trustee would have to do is appear."

I.      The proposed Compromise does not analyze the parties and provide a cost/benefit analysis of the Compromise compared to Debtor taking the claims to be settled.

J.      As an alternative to settling with The Katakis Parties, Debtor states, "I offered 15% of the amount I win which could be $6 million plus punitive damages and that was rejected [by the Trustee]."

K.      Debtor argues that a prior tentative ruling states that the Bankruptcy Estate's interests are in a second position behind the Debtor, Debtor's wife, and Debtor's children for any "personal injury" exemption pursuant to California Code of Civil Procedure § 704.140 that Debtor would assert.

**Discussion of Prior Rulings on Personal Injury Exemption Identified in Paragraph K Above**

The actual ruling of the court is stated in the Civil Minutes from the August 25, 2017 hearing on the Trustee's Objection to Claim of Exemption. Dckt. 455. As set forth in the order on that exemption, the issue of whether a personal injury exemption could be asserted in the "Personal Injury, Malicious Prosecution" claims listed on Schedule was bifurcated into a separate objection. Order, Dckt. 457.

The Trustee filed a separate Objection to Claim of Exemption pursuant to California Code of Civil Procedure § 704.140 in the assets listed as the "malicious prosecution" on Schedules B and C. The court sustained the Objection, disallowing the claim of exemption in its entirety. Order, Dckt. 559. The court's Memorandum Opinion and Decision sustaining the Objection addresses the extensive opposition (procedural, substantive, and Constitutional), includes,

In his Opposition, Debtor offers no arguments or evidence as to why the "malicious prosecution suit" is litigation for a personal injury. Rather, he merely assigns that label to the exemption he desires to claim—much in the way he sought to claim the

1    wrongful death damages for the "malicious prosecution suit" when no death existed.

2    Memorandum Opinion and Decision, p.18:20-23; Dckt. 558. As with many other arguments, Debtor

3    merely made the argument without any credible legal authority or evidence to support his

4    contentions. The court further discussed that Debtor failed to show that if the "malicious

5    prosecution suit" was an exemptible personal injury asset, that such asset was necessary for Debtor's

6    support. *Id.* at 23:9-23. The court also provided Debtor with a detailed discussion of what may be

7    the proper subject of "judicial notice" in federal court. *Id.* at 25:23-28, 26-27.

8    **Continuation of Review of Debtor's Grounds for Reconsideration**

9        L.    The settlement is so small that the Katakis Parties will continue to stalk Debtor and
10   continue in their violations of Debtor's rights.

         M.    The settlement was made by the Trustee before Debtor had drafted the 4th Amended
11   Complaint that he wants to file in the State Court Action, for which there is the final
     State Court Judgment, which has been affirmed on two appeals.
12
         N.    "Waives cc1542." (While not explained, this California Civil Code section provides
13   that a general release does not include unknown claims which, if known, would have
     materially affected the terms of the settlement.)
14
         O.    The Trustee has not heard Debtor's "side of the facts and hasn't reviewed any of my
15   documentation to prove that the claim is false." (The "claim" being referred to
     appears to be the final State Court Judgment which has been affirmed on two
16   appeals.)

17       P.    ".1% is not close to Fair and Equitable and should be denied."

18       Q.    Debtor has claims worth $40 Million that the Trustee is settling for $40,000.

19       R.    Counsel for Katakis Parties "committed malpractice and took away my 5th and 14th
20   amendment rights."

         S.    Katakis Parties "got Fox Hollow by committing criminal foreclosure fraud."
21
         T.    The Katakis Parties will "continue to stalk me at a cost of $40,000, and [the
22   Compromise] takes away [Katakis Parties] potential to pay me $10 million while
     [Katakis Parties] continues his suits against me after discharge if I can't stop him in
23   4 separate lawsuits [in the bankruptcy court for nondischargeablity and objection
     to discharge]."
24
         U.    "Debtor has submitted about 1500 pages in this court that provide Katakis and
25   [Katakis Parties counsel] have lied." Debtor asserts that the Compromise is not fair
     and equitable.
26
         V.    If the Katakis Parties will dismiss all of their actions in the bankruptcy court for
27   nondischargeability and objection to discharge against Debtor and "repay a few
     million to debtor . . . that would be a little closer to approaching 'fair and equitable.'"
28

W.     An extensive discussion and argument why Debtor believes that the Compromise
       does not meet the minimum standards for approval by this court.

X.     "We have submitted a 60d motion for fraud on the 332233 case [State Court Action
       in which there is the final State Court Judgment] and Mr. Durbin blocked it and the
       Trustee does not want to participate, but I am the one who submitted the motion and
       all the trustee would have to do is appear. That was the Debtors filing as a result of
       Judge Sargis stating that he didn't want to have to review 'all the facts' and make
       'that decision'."

The last statement by Debtor that this court "didn't want to have to review 'all the facts' and make

'that decision' is not merely inaccurate, but clearly intentionally deceptive.  The decision was that

the federal judge in the Bankruptcy Case could not use Rule 60(b) to vacate the final State Court

Judgment, the State Court Decision, the two District Court of Appeal Decisions, and orders and

judgments.  Civil Minutes, Dckt. 113.   The decision was not that the bankruptcy judge "did not

want to spend the time to review the facts, then the time to articulate the correct decision, and then

issue the orders."  Rather, it was a determination was made that federal court jurisdiction could not

properly be exercised for a bankruptcy judge to be the "super appellate court" to overrule and vacate

the final State Court Judgment and the two District Court of Appeal Decision.  Further, no basis was

shown for a bankruptcy judge overruling and vacating the orders and judgments of a United States

district court judge.

Y.     Debtor asserted that his promise to pay 15% of what he might ultimately win after
       further litigation rather than the $40,000 cash to be paid by The Katakis Parties was
       the "fair and equitable result," not approval of the Compromise.

Z.     The Katakis Group will use the Compromise "to continue his very stressful criminal
       Stalking and malpractice."

AA.    The Trustee has not analyzed the 2,500 pages of exhibits that go with the proposed
       4th Amended Cross Complaint Debtor wants to file.

BB.    "Clearly, the Trustee did not know enough about the case and was hornswaggled by
       the creditor."

CC.    Debtor's $40 Million of claims are for over 20 years of "Stalking (see Exhibit 1),
       assault and criminal foreclosure fraud" by The Katakis Parties and their counsel.
       Exhibit 1 to the Opposition is letter written by Debtor on his law firm letterhead to
       Andrew Katakis asserting various claims.  Further, that if Mr. Katakis did not cease
       immediately, then Debtor would take action immediately.  The letter is dated
       January 27, 2003.

Opposition, Dckt. 487.

These are the same arguments, contentions, and positions that Debtor asserts are "new" or

25

1    not considered by the court previously.  Debtor clearly presented the court with, and the court

2    addressed his various grounds in opposing the Motion to Approve Compromise.

3         What Debtor really argues now is that the court ruled on the Motion to Approve

4    Compromise, but the court did not agree with Debtor or his desires.  Debtor argues that the court did

5    not read "the 2000 pages of exhibits about [Andrew] Katakis and [Greg] Durbin's wrongful and

6    unlawful action." Dckt. 575, at 3.  Debtor claims that the court "had not heard or read [Debtor's]

7    evidence." Dckt. 575, at 4.  This argument is essentially that Debtor had many, many documents that

8    he did not submit to the court as part of his Opposition, but now asserts that the court should have

9    provided "legal services" to assemble those documents for Debtor.  Further, Debtor appears to assert

10   that no compromise can be approved by this court unless: (1) he agrees or (2) there is a full trial on

11   the merits (and a judgment entered thereon to which he agrees).

12        Debtor stresses that "[t]he Court needs to reconsider its order approving the compromise"

13   because the compromise between The Katakis Parties and the Chapter 7 Estate guarantees "that

14   Katakis will continue to stalk and assault [Debtor] beyond the 13 years he has already committed

15   stalking," allegedly. Dckt. 575, at 6.

16        These arguments fail for several reasons.  First, the court previously considered the substance

17   of the now asserted-to-be $40 Million of claims.  The court considered the litigation, the 2009 State

18   Court Judgment that has been affirmed on appeal, as well as Debtor's assertion that in 2017 he now

19   will move promptly and easily to set aside the 2009 judgment (for which judgment Debtor has

20   already prosecuted two appeals on since 2009).

21        Second, the court gave Debtor and his allies the ability to "buy" from the bankruptcy estate,

22   with a right of first refusal, these claims that Debtor now states have such substantial value for the

23   meager $40,000 (in Debtor's opinion) that was tendered by The Katakis Parties  Not only did

24   Dr. Machado, the trustee of the purported irrevocable trust and managing member of the limited

25   liability companies into which Debtor transferred property prior to filing his Bankruptcy Case,

26   refuse, but Dr. Machado made it clear that she wanted nothing further to do with Debtor's

27   Bankruptcy Case.

28        Third, Debtor offers no evidence of or plausible grounds for why he has not taken the action

to simply and successfully vacate the 2009 State Court Judgment, while all the time able to litigate the 36-day trial, two appeals of the 2009 State Court Judgment, and then prosecute as debtor in possession his Chapter 11 case.

Fourth, Debtor offers no evidence that the cornerstone of his contention is valid - that he has been disabled.  Further, his contention that it was The Katakis Parties who have engaged in a scheme of misconduct and Debtor is "the innocent victim" runs contrary to the express findings and conclusions of the Decision in *Mauctrst, LLC et al. v. The Katakis Parties*, California Superior Court, County of Stanislaus Case No. 332233, which has been affirmed on appeal, and the State Bar Court Decision in *In the matter of Richard Carroll Sinclair*, Member No. 68238, Case Nos. 13-O-10657-PEM, 13-O-11618 (Cons.), from which the California Supreme Court has disbarred Debtor.

**Debtor's Manufacture of "New" $40 Million of Claims
Against The Katakis Parties**

Though having more than two decades of dealings in his scheme involving the Fox Hollow Property (from which the State Court Judgment emanated  and more than a decade of having the purported claims against The Katakis Parties, Debtor did not take action to assert such "rights" and "claims."  In more recent time, during the period of 2010 through the Summer of 2015, Debtor litigated a 36-day trial, the trial attorney's fee motion, two appeals of the final State Court Judgment, and the Bankruptcy Case as debtor in possession, but did not see $40 Million value in such claims to be prosecuted by him.

To the extent that such $40 Million in claims existed, Debtor had to list them on his Schedules, which are made under penalty of perjury, filed in this Bankruptcy Case.  No such claims were disclosed by Debtor when he filed his Chapter 11 case or in any schedules (original or amended) filed by Debtor in his Bankruptcy Case.  Rather, the existence of such alleged claims was advanced by Debtor in the Bankruptcy Case when the Chapter 7 Trustee was moving toward a settlement resolving the almost two decades of disputes and any claims (which, whether disclosed or not, are property of the bankruptcy estate, 11 U.S.C. § 541(a)) between The Katakis Parties and Debtor.

1    All that was listed by Debtor for such claims was, "Katakis case for malicious prosecution

2    plus Truax case...approx $6 million." 14-91565; Schedule B filed in Debtor's Bankruptcy Case,

3    Dckt. 42 at 3.

4        As addressed above, it was not and is not merely the court's determination that these asserted

5    claims do not have the $40 Million of value (or any), but that of Deborah Sinclair, Debtor's wife,

6    and Dr. Machado, Debtor's sister who is the trustee of the purported irrevocable trust of Debtor and

7    managing member of the limited liability companies, all of whom received transfers of assets from

8    Debtor prior to his filing this Bankruptcy Case.  Neither Deborah Sinclair nor Dr. Machado saw

9    sufficient value to pay $40,000 (using the right of first refusal given by the court) to purchase the

10   claims which Debtor: (1) now claims exist and (2) now claims to have $40 Million in value.

11       As with most of Debtor's litigation strategy, the contentions are not based on facts (for which

12   evidence is provided) or law, but merely the demands of Debtor.

### Failure to Provide any Newly Discovered Evidence

14       Debtor stated in the Motion to Reconsider that his grounds for this relief include new

15   evidence that exists for the court to consider. Dckt. 575, at 1. Debtor has failed to present any newly

16   found evidence or new information to the court.  What Debtor continues to (re)argue is that he has

17   stale, old claims which he did not previously attempt to prosecute and he failed to disclose on his

18   bankruptcy schedules (signed under penalty of perjury) in this Bankruptcy Case.  Debtor asserts he

19   has a stale, old contention that the 2009 State Court Judgment, affirmed on appeal, can be "easily"

20   set aside for fraud because The Katakis Parties are "bad people."  But Debtor (who is a highly

21   educated, experienced attorney and business person) offers no credible, good faith explanation as

22   to why in 2009, 2010, 2011, 2012, 2013, 2014, and 2015 (while serving as the debtor in possession)

23   he did not quickly prosecute such contention that he presents as one in which victory is all but

24   assured.

25       All of these contentions, and evidence (including Debtor's contention that he was disabled

26   in 2009) relating thereto, well predated the November 2016 Motion to Approve the Compromise,

27   the order from which is now at issue before this court.  The evidence predated the December 2015

28   conversion of the Chapter 11 case to one under Chapter 7.  The evidence predated the November

2014 commencement of this Bankruptcy Case by Debtor, with Debtor then being protected by the

bankruptcy laws and having the obligation to prosecute such claims (if they actually existed and had

merit). The evidence existed in 2009, 2010, 2011, 2012, and 2013, while the Debtor actively

litigated the 36-day trial from which the State Court Judgment was entered, the first appeal of that

judgment (which was affirmed), the attorney's fee motion on remand, and the second appeal on the

judgment which was affirmed.

This court's Memorandum Opinion and Decision granting the Motion to Approve

Compromise, issued on January 9, 2017, is as true now as it was at the beginning of the year. *See*

Dckt. 535. In that Opinion, the court reviewed the pleadings in this Bankruptcy Case and other

related matters extensively, even highlighting that Debtor's claims have surprisingly and suddenly

increased under penalty of perjury from $6 million to $25 million to more than $40 million. *See*

Dckt. 535, at 24–25. As previously determined by the court:

> It appears that the valuations of these claims by Debtor-Sinclair are not based on
> rational analysis, but whatever number Debtor-Sinclair believes supports whatever
> he is attempting to do, or prevent from someone else doing, in this bankruptcy case.
> In his November 16, 2016 filed Status Report, Debtor-Sinclair states that he now
> computes the damages as his "losses" caused by The Katakis Parties Status Report,
> p. 3:3–4. The court is not provided with any explanation as to what "losses" have
> occurred since November 2014 that have caused the value of this asset to increase
> to whatever portion of the $6 Million stated on Schedule B under penalty of perjury
> when this case was filed to now $40 Million. No explanation has been provided how
> "losses" could have occurred since November 2014, when Debtor-Sinclair
> commenced this bankruptcy case and the automatic stay has protected
> Debtor-Sinclair and the property of the bankruptcy estate. Additionally, no
> declaration or credible explanation is provided as to what "assets" the bankruptcy
> estate or Debtor-Sinclair could have for such "losses" to be incurred, Debtor-Sinclair
> having transferred all significant assets to his wife, the Sinclair Trust, and the limited
> liability companies prior to the commencement of this case.

*Id.*, p. 25:11–24. Contrary to Debtor's assertion that the court ignored what Debtor presented, the

court considered it, but just did not agree with Debtor's contention that such hugely valuable claims

have materialized since the Bankruptcy Case was filed or they existed prior to Debtor filing the case

(which Debtor failed to disclose on Schedule B filed under penalty of perjury).

**Conclusion**

This Motion to Reconsider is consistent with Debtor's demonstrated overall litigation

strategy to delay, deter, and prevent the court from addressing matters on the merits. Debtor

29

1  continues to work hard to stay in what the court has identified as a "litigation death spiral" with The

2  Katakis Parties.  This court previously discussed Debtor's "say whatever, regardless of the actual

3  facts, and argue whatever, without regard to the legal merits" litigation strategy, so long as it fits

4  Debtor's narrative to keep the court from ruling on the merits.  *See* Memorandum Opinion and

5  Decision on the Motion to Approve Compromise, p. 14:27–20:16;  Dckt. 535.

6      This court again also addresses the use of such evidentiary unsupported and legally meritless

7  litigation strategy, and the similar filings of other courts, in the Memorandum Opinion and Decision

8  on the Motion for Summary Judgment in Adversary Proceeding No. 15-9009, Dckt. 107.

9      The court concludes, again, that granting the Motion to Approve Compromise was warranted

10  and in the best interest of the Estate.  Debtor fails to show grounds under either Rules 57, 59(e) or

11  Rule 60(b) for relief from the prior order.  No newly discovered evidence has been provided to the

12  court.  No error of law has been shown.

13      Rather, Debtor clearly demonstrates that no such claims exist or that to the extent any would

14  be asserted, such claims cannot be litigated and liquidated quickly and easily.  Despite being an

15  experienced, highly-educated, self-admitted excellent attorney, Debtor did not commence an action

16  or try to enforce the asserted claims for more than a decade.  That inability has not been because

17  Debtor lacked access to state and federal courts.  This failure to act has not been caused by any

18  disability.  Debtor has been actively litigating with The Katakis Parties for more than a decade in

19  various state and federal courts.

20      Debtor is not credible now, nor has he been in the past, that what was stated under penalty

21  of perjury on Schedule B to be $6 million in claims has now grown (since December 2014 filing of

22  the Schedules) in types of claim and amount to $40 million.  Debtor offers nothing new, but merely

23  restates what he has argued before, both in this court, the district court, and state courts.  Debtor

24  offers no explanation as to why, if such valuable claims existed or such an "easy" voiding of the

25  State Court Judgment could be obtained, why he did not do it during 2010, 2011, 2012, 2013, 2014,

26  and 2015, while he actively litigated in state and federal trial courts and the state appellate court.

27      Debtor's current Motion to Reconsider is just another in a multi-decade-long string of

28  meritless litigation, rearguing lost arguments and pressing claims without regard to factual or legal

1    support. *See* Memorandum Opinion and Decision Granting Motion for Summary Judgment, Adv.

2    Pro. No. 15-9009, Dckt. 107.

### DEBTOR'S CONCERNS THAT WITHOUT
### ABILITY TO USE SETTLED CLAIMS HE IS
### DEFENSELESS AGAINST NONDISCHARGEABLE DEBT

5          At oral argument, Debtor continued in his argument that the Trustee should not be allowed

6    to settle the claims with The Katakis Parties and administer property of the bankruptcy estate

7    without also obtaining a release of all of the nondischargeable claims that are being asserted against

8    Debtor. Debtor's argument presupposes that Debtor has the right to pursue such litigation, with or

9    without merit, as he desires, overriding the Trustee's responsibility to obtain the value of any such

10   claims for the bankruptcy estate.

11         First, as noted above, the Trustee has obtained a release for Debtor for claims of The Katakis

12   Parties except for two, albeit large, asserted nondischargeable claims. The first is in excess of

13   $1,000,000.00 based on the grounds of injury inflicted by Debtor's willful and malicious conduct,

14   and fraud. The second is in excess of $5,000,000.00 for RICO claims being prosecuted in the

15   District Court Action. The fact that the Trustee could not make those obligations disappear does not

16   render the Compromise improper or show that the Trustee has not recovered the actual value of any

17   such assets.

18         Second, Debtor appears to ignore his substantial rights under California Law relating to the

19   enforcement of judgments. Judgment debtors are given extensive protections in exempt assets and

20   protection of income necessary to maintain the necessaries of life. These include Cal. C.C.P.

21   §§ 695.030, 699.720, 703.010– 703.115, 704.010–704.210, 704.710–704.714, 704.910–704.995, and

22   706.050–706.052. Additionally, Federal Law protects Social Security Benefits from garnishment.

23   42 U.S.C. § 407.

24         Looking at the Schedules filed by Debtor under penalty of perjury, if taken as true, he states

25   that there is little, if anything, of value for a creditor trying to enforce a judgment. On Schedule A

26   Debtor lists a 20-year leasehold in 8012 Oak View Drive property where Debtor resides.

27   Schedule A, Dckt. 42 at 1. However, he has subsequently opined that he actually has no enforceable

28   leasehold interest as it has never been reduced to writing. It appears that this property is subject to

31

a deed of trust securing an obligation of almost $700,000.00.  Schedule D, *Id.* at 7.

On Schedule B Debtor lists, with two exceptions, no personal property assets of any significant value.  *Id.* at 2-4.  The first possible significant asset listed are "law office receivables" with a stated value of "approx $1 million."  *Id.* at 3.  Debtor was disbarred as an attorney in 2015.  These appear to be "well aged" accounts receivable, putting their value in doubt.  More significantly, the accounts receivable are property of the bankruptcy estate, which the Trustee would be enforcing – if they had value.

Third, there is listed as an asset "Katakis case for malicious prosecution plus Truax case," with a state value of "approx $6 million."  *Id.* at 3.  The "Katakis case" assets, including the additional purported claims settled by the Trustee for $40,000.00 (which Debtor's spouse and Debtor's sister chose not to buy for $40,000.00 as discussed above) have been resolved by the Trustee.

On Schedule I Debtor states that he is unemployed and has income of only $1,532.00 a month, that being from Social Security.  Mr. Sinclair has been disbarred by the California Supreme Court, so he could not reenter into that profession, even if he so desired at his age and stage of life.  At one point Debtor stated that he was going to develop the Oak View Drive Property into a senior citizens living center.  However, Debtor states that he has no enforceable leasehold interest in the property and has not identified any source of funding for any such real estate development.

In substance, while The Katakis Parties may ultimately obtain nondischargeable judgments against Debtor (arising in large part out of Debtor's conduct in suing The Katakis Parties), such judgments may well appear to be economically unenforceable.  Debtor, based on his Schedules stated under penalty of perjury, has become the financial turnip without assets against which The Katakis Parties could try to enforce their nondischargeable judgments.[4]  While financially unenforceable, The Katakis Parties may hold nondischargeable judgements in what has been

---

[4]  The "turnip" reference is to the old saying that "one cannot get blood from a turnip" or "blood from a stone."  If there is no ability to pay, or be forced to pay, then the nondischargeable judgments that may be obtained by The Katakis Parties will be little more than decorative hangings on the wall, or available for "MAD" purposes (discussed below) if Debtor re-engages the litigation.

"MAD"[5] litigation in both federal and state courts over the past two decades.

Based on the financial information provided by Debtor under penalty of perjury in this Bankruptcy Case, Debtor is dependent on the grace of his family - spouse, sister (as trustee of the purported irrevocable trust and limited liability companies), and children, all of whom have been the beneficiaries of transfers of assets over the years – for additional support beyond his Social Security Benefits, to the extent necessary.[6]  But that is the economic situation that Debtor has created – which now appears to work greatly to his benefit with respect to any nondischargeable judgments.

Therefore, in light of the foregoing, the Motion to Reconsider is denied.

**Dated:** May 30, 2017                    **By the Court**

**Ronald H. Sargis, Judge**
**United States Bankruptcy Court**

---

[5] "MAD" is a reference to the Mutually Assured Destruction nuclear deterrence doctrine from the 1960-1970's.  The United States and the U.S.S.R. sought to block a first attack by amassing large retaliatory nuclear weapons stockpiles.  Thus, though the nation first attacked was reduced to rubble, it would still have the ability to reduce the attacker's nation to radioactive rubble.

[6] Given the propensity of the parties to "quote" purported determinations of the court, the court makes no determinations as to the nature, validity and extent of any such transfers. Rather, assuming that Debtor is making true and accurate statements under penalty of perjury, it would appear that Debtor has rendered himself such a "turnip."

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Aaron A. Avery<br>2150 River Plaza Drive, Ste. 450<br>Sacramento, CA 95833 | Hilton A. Ryder<br>7647 N. Fresno Street<br>Fresno, CA 93720 |
| D. Greg Durbin<br>5 River Park Place E<br>P.O. Box 28912<br>Fresno, CA 93729-8912 | |